Bᴇʀᴛ Lᴇsᴛᴇʀ, Aᴅᴍɪɴɪsᴛʀᴀᴛᴏʀ ᴏғ Esᴛᴀᴛᴇ ᴏғ Aɢɴᴇs N. Lᴇsᴛᴇʀ

*v.*

Fʀᴀɴᴋ Rᴏsᴇ, *et al.,* ᴀɴᴅ Eᴅɢᴀʀ Aʟʟᴇɴ Bʟᴀɴᴋᴇɴsʜɪᴘ

(No. 12177)

Submitted January 9, 1963.     Decided February 26, 1963.

576

578

CALHOUN, JUDGE, dissenting.

*Crockett, Tutwiler & Crockett, Charles A. Tutwiler,* for appellant.

*Harry G. Camper, Jr.,* U. S. District Attorney, *Ben B. White, Jr., Leo Catsonis, George A. Daugherty,* for appellee.

BERRY, PRESIDENT:

This is an action of trespass on the case instituted in the Circuit Court of Mercer County, West Virginia, on August 26, 1959, under the old procedure, but the trial of the case did not start until August 29, 1960, after the effective date of the New Rules of Civil Procedure in this State, which was July 1, 1960.

This action arose out of an automobile accident which occurred in McDowell County, West Virginia, on March 28,

1958, in which the plaintiff's decedent, Agnes N. Lester, was killed. The plaintiff, Bert Lester, husband of the decedent, qualified as the administrator of her estate in the office of the clerk of the county court of Mercer County on September 2, 1958, and instituted this wrongful death action in said County almost a year later against the owners and operators of the three vehicles involved in the action, all of whom were residents of McDowell County, with the exception of J. D. Landreth, a resident of Mercer County, who was the operator of the truck owned by the Model Furniture Company, a Corporation. During the trial of the case Landreth and the Model Furniture Company were dismissed as defendants, and on September 2, 1960, the jury returned a verdict in the amount of $10,000.00 against the defendants, Frank Rose and Edgar Allen Blankenship. A motion to set aside the verdict of the jury was made by both defendants, Rose and Blankenship, which motion was overruled about four months later on January 10, 1961. On February 17, 1961, the defendants, Rose and Blankenship, filed a motion to dismiss the action on the grounds that the Circuit Court of Mercer County lost jurisdiction of the case as to the non-resident defendants Rose and Blankenship when the only defendant resident of Mercer County was dismissed from the action. The motion to dismiss was overruled by the Circuit Court of Mercer County on July 28, 1961, at which time judgment was entered on the jury's verdict in the amount of $10,000.00 in favor of the plaintiff. Upon application to this Court by the defendant, Edgar Allen Blankenship, an appeal was granted as to him from the judgment of the trial court on May 1, 1962. No appeal was taken by the defendant Rose from the judgment of the trial court, and said judgment is therefore final as to him.

The accident out of which this action arose occurred on U. S. Route 52, at a place known as the "Eckman Curve", which is about eleven miles east of Welch and about one mile west of Keystone, West Virginia, in McDowell County. The plaintiff's decedent, Agnes N. Lester, was a passenger in a 1956 Ford pick-up truck owned by the Model Furniture Company, a Corporation, of Welch, and operated by J. D. Landreth, who lived at Bluewell, Mercer County, West Vir-

ginia. Landreth picked up the plaintiff's decedent in front of the place of her employment in Kimball, West Virginia, around 5 o'clock p. m., or a little after, on the day of the accident, as he had done on other occasions. Mrs. Lester also lived at Bluewell, Mercer County.

Landreth testified that he was driving between 30 and 35 miles per hour before entering the curve at Eckman, and that, after rounding the curve, he noticed the Dodge pick-up truck which was being driven by the defendant Rose coming across the road toward him at a fast rate of speed; that he pulled over to his right side of the road with the right wheels of his truck on the berm off the hard surface and came to a stop on his right-hand side of the road; that even if he had not come to a complete stop at the time he was struck he could not have been driving over five or ten miles per hour at the time. He testified that he saw the Blankenship car being driven behind his truck for some distance before the accident, that Blankenship's car was being driven at about the same speed as his truck, which was 30 or 35 miles per hour. After he turned his truck to the right of the road and came to a stop, or almost a stop, the Rose truck proceeded across the road and hit his truck almost head-on, or a little left of the front of both vehicles, smashing the front of each vehicle, resulting in the 1954 Dodge pickup truck, which was being driven by Rose, being completely demolished and causing considerable damage to the 1956 Model Furniture Company truck, which was being driven by Landreth. Landreth was injured, having the breath knocked out of him, and does not remember much after the first impact. The plaintiff's decedent was thrown against the windshield of the truck causing damage to it. She was also knocked back against the rear of the cab of the truck, causing damage to it by reason of her head coming in contact with it. She was found on the floor of the truck with severe injuries to the front and back of her head. The death certificate introduced into evidence in the case shows that she died from head injuries.

The evidence in this case shows that at about the same time the truck driven by the defendant Rose hit the front

end of the Landreth truck, the 1956 Dodge automobile which was driven by the defendant Blankenship hit the rear of the Landreth truck, either by Blankenship running into the rear of Landreth's truck (this being the plaintiff's evidence) or that the Landreth truck was knocked back against the front of the Blankenship automobile (this being evidence offered by the defendants). In either event, considerable damage was done to the rear of the Landreth truck, the frame being badly bent and other parts battered and about $775.00 damage was done to the front end of the Blankenship automobile.

The exact time of the accident is not fixed; however, the evidence indicates that it occurred about 5:40 p. m. The road was wet and slippery at the time of impact.

The defendant Blankenship testified that he left the H. C. Lewis Oil Company in Welch, where he was employed, at about 5 o'clock p. m., and proceeded to drive to his home at Rolfe, McDowell County, West Virginia. He stated that after leaving Landgraft he passed an automobile driven by John R. Wright, a shop-foreman for the Mabe-Cartright Motors, Inc., in Welch, at which place the Blankenship car was later repaired; at the time he passed the Wright automobile he was driving on about a thousand yard straight stretch of the highway.

Wright testified that he was driving between 40 and 50 miles per hour, that the Blankenship car was traveling about 50 or 60 miles per hour at the time it passed him, that Blankenship did not diminish his speed after passing his car, that when Blankenship passed him he was several hundred yards from the "Eckman Curve", and that he did not see any vehicle in front of the Blankenship car, but that when he rounded the curve the accident had already occurred about 100 yards from the curve around which the Blankenship car left his view and that it had rammed into the back of the Model Furniture Company truck.

Blankenship testified that he was driving about 30 or 35 miles per hour after rounding the curve, and was proceeding behind the Model Furniture Company truck about three

to four car lengths or 60 to 70 feet, which truck was being driven at about the same rate of speed as his car; that when he saw stop lights of the truck in front of him come on and the truck pull to the right of the road he applied his brakes and pulled to the right of the road; and that the Model Furniture Company truck was knocked back into the front end of his car, knocking his automobile back from 3 to 4 feet.

One of the witnesses, Thomas Williams, who testified on behalf of the plaintiff, stated that he was on his way home from work and was near the bridge that leads over into the bottom where he lived when he heard a crash; that when he looked around he saw the Blankenship automobile run into the rear of the Landreth truck, and that it was just a short period of time between the time he heard the noise of the first crash until he looked up and observed this ramming of the truck by the car. There is controversy as to whether this witness could have seen the Blankenship car run into Landreth's truck. It was contended by the defendant that Williams could not have seen this happen, because of the position in which he indicated on the map he was located; that had he been in such position, the terrain in and around the scene of the accident would have blocked his view. This witness indicated that he was not familiar with and did not understand the map used in connection with his testimony, which was made by an engineer employed by the defendant. After the defendant's engineer testified that Williams could not have seen the accident, the plaintiff, during a night recess of the trial, had Williams go to the scene of the accident with another engineer and point out his position when he witnessed the accident, after which the plaintiff's engineer testified that Williams could have seen the Blankenship car run into the rear of the Landreth truck from where the witness said he was located at the time of the accident.

The plaintiff introduced certain evidence by Clarence S. Bruce, who qualified as an expert witness, in support of his contention that the Blankenship car rammed into the rear of the Model Furniture Company's truck with considerable force. Bruce qualified as a "traffic accident analyst", of many years experience. He had worked for the Bureau of

Standards for the United States Government for over thirty years and had developed tables with regard to the stopping time of various motor vehicles, taking into consideration the speed, reaction time of the driver, and other factors, Mr. Bruce observed the scene of the accident before he testified and gave testimony with regard to the weight of the various vehicles involved in the accident, of which he said he had specific knowledge. He was asked hypothetical questions, assuming various facts which had been introduced into evidence, and gave answers based on mathematical calculations and the law of physics. He was given the speed of the various vehicles at the time of the accident and also used the weights of each vehicle, as furnished or assumed by him, in answer to the question relative to said vehicles in his testimony. He was told the number of passengers in each vehicle, and he added weight to each vehicle, considering the number of persons, plus one hundred pounds for oil, gas and water. The amount of additional weight was 250 pounds for one passenger, and four hundred pounds for two passengers. The exact weights of the passengers in the vehicles and that of the gas, oil and water were not furnished in the hypothetical question, but were assumed by the witness in answering the question. All of this was brought out by cross-examination, which was quite lengthy and elicted additional assumption of facts, supported by the evidence, to which answers were given by the expert witness. This witness testified under the assumed facts propounded to him in the hypothetical question and considering the weights of the vehicles which were over 3000 pounds each, as indicated in his answer to a question on cross-examination, that when the truck driven by Rose hit or struck the Model Furniture Company truck the effect of the collision between the two trucks would have knocked the Blankenship car back a distance of about 100 feet, assuming that both the Model Furniture Company truck and Blankenship's car were stopped, or practically stopped at the time of the impact. On cross-examination he stated that if the Blankenship car was making 35 miles an hour about 70 feet back from the Landreth truck, which, just prior to braking, was traveling at a speed of about 35 miles per hour and that if

Blankenship started to apply his brakes at the time he was aware that Landreth had applied the truck brakes, Blankenship would have hit the rear of Landreth's truck before his automobile could have been stopped, taking into consideration the reaction time, the stopping time or distance the Landreth truck traveled before it was stopped. Assuming the other factors stated above to remain constant, Bruce further testified that at 30 miles per hour at the same distance Blankenship's car would not have hit the rear of Landreth's truck. These answers were all brought out on cross-examination by the attorney for the defendant. But, this witness further testified that, even under Blankenship's version of having stopped, after the vehicles settled to rest there would have been a great deal more than 3 or 4 feet between the Blankenship car and the Landreth truck if the Blankenship automobile had been driven in the manner testified to by Blankenship at the time the Rose car hit the Landreth truck, since the impact of Rose on Landreth would have knocked Landreth into Blankenship with great force and thereby knocked Blankenship backward many times 3 to 4 feet. All of the evidence introduced by this witness was over the objection of the defendant, Blankenship, and tended to prove that Blankenship slammed into the first wreck rather than having been the victim of it.

Evidence as to the reputation or good character of the plaintiff's decedent was introduced by the plaintiff during the trial of the case, as well as photographs of the place of her employment in Kimball, and photographs of plaintiff and plaintiff's decedent taken immediately following their wedding in November, 1957.

Evidence was introduced that Rose had bought two bottles of wine at the liquor store the day of the accident, that the wine bottles were found in his truck after the accident, and that a whiskey bottle was found in Landreth's truck following the accident.

A stipulation was made a part of the record that a blood test revealed that Rose had .20% by weight of alcohol in his blood and that .15% by weight of alcohol was prima facie evidence of intoxication; that Landreth had .04% by weight

of alcohol in his blood and that under .05% weight of alcohol in the blood would not create an intoxicated condition. Both Rose and Landreth denied that they were intoxicated although Rose admitted drinking some wine while Landreth said he had consumed only one bottle of beer with his lunch on the day of the accident.

The defendant Rose testified that before the accident he was driving about 25 or 30 miles per hour and hit a hole in the road which caused his left front tire to "blow out", that he lost control of his truck and went over onto the left side of the road but that he got back onto his side before the accident occurred; that there were two impacts at the time of the collision, one when his truck hit the Landreth truck, after which he straightened up, and another which knocked him back against the door and that he did not remember anything else until the next day.

Other witnesses testified during the trial of the case and their testimony with regard to the positions on the highway of the vehicles is conflicting. However, the testimony of all of the witnesses and the physical facts place the Landreth truck and the Blankenship automobile on their right side of the highway, with the majority of the witnesses indicating that they were partly off the hard surface and on the berm after the accident occurred.

The errors assigned by the defendant Blankenship for reversal of the trial court can be combined into the following groups: (1) That the trial court erred in not declaring a mistrial when the plaintiff dismissed the action as to the defendant Landreth, the only defendant who was a resident of Mercer County, because upon such dismissal the Circuit Court of Mercer County lost jurisdiction of the case; (2) that the defendant Blankenship was not guilty of any negligence, that his actions did not in any way contribute to the death of plaintiff's decedent, and that the accident was caused solely by the negligence of the defendant Rose, which intervened and insulated any action on the part of Blankenship that could be construed as negligent; (3) that the trial court erred in allowing the expert testimony of Bruce to go to the jury over the objection of the defendant; (4) that

the trial court erred in allowing photographs of the plaintiff's decedent's place of employment and photographs of plaintiff's decedent taken following her wedding to be introduced into evidence; (5) the trial court erred in giving instructions 2, 3, 4, 5, 6(a) and 7, offered by the plaintiff over the objection of the defendant, Blankenship, and in refusing to give instructions 5, 8, 12 and 14, offered by the defendant Blankenship.

A general assignment of error was made to the effect that the trial court admitted certain improper evidence over the objection of the defendant Blankenship, and refused to admit certain proper evidence offered by Blankenship and objected to by the plaintiff, but there is no specific reference in the assignment to such evidence. The only specific improper evidence set out and argued in the brief is to the effect that it was error to admit testimony pertaining to the reputation or good character of plaintiff's decedent. Therefore, this is the only matter that will be discussed under this general assignment. *Montgomery* v. *Montgomery,* 147 W. Va. 449, 128 S. E. 2d 480 (advance sheet).

Inasmuch as the record presented here indicates that the trial of the case was conducted under the old procedure, and not under the New Rules of Civil Procedure, which became effective in this State in July, 1960, and bills of exceptions were used to bring the record of this case to this Court, it is necessary for this Court on its own motion to dispose of a preliminary matter before the case can be considered on its merits.

This action arose over two years before the New Rules became effective. The action was instituted in the Circuit Court of Mercer County about eleven months before the New Rules became effective, although the case did not proceed to trial until about two months after the effective date of the New Rules in this State. It is clear from the record that the defendant Blankenship used and relied upon bills of exceptions for the transcript of the record in this case. The orders requested of the trial court and obtained clearly disclose this fact. In cases where bills of exceptions are necessary and used, they must be obtained within sixty

days from the date of the judgment or the end of the term at which the judgment was rendered, unless the time is extended by the trial court. Code, 56-6-35. The record in the case at bar discloses that orders attempting to have the time extended in which to obtain a bill of exceptions were entered, but the orders merely provided for a stay of execution for the judgment. Where bills of exceptions are necessary, the failure to obtain a bill of exceptions within the time prescribed by the statute or to obtain an extension thereof is jurisdictional and may be raised by this Court on its own motion. *Grottendick* v. *Webber*, 134 W. Va. 798, 61 S. E. 2d 854. A stay or suspension of the execution of a judgment does not extend the time in which to obtain a bill of exceptions. *State by the State Road Com.* v. *Consumers' Gas and Oil Co.*, 130 W. Va. 755, 45 S. E. 2d 923; *State* v. *Varner*, 131 W. Va. 459, 48 S. E. 2d 171; *State* v. *Leadmon*, 131 W. Va. 378, 48 S. E. 2d 663; *Grottendick* v. *Webber, supra; Montgomery* v. *Montgomery*, 147 W. Va. 449, 128 S. E. 2d 480 (advance sheet). The judgment in this case was entered July 28, 1961. The bills of exceptions were filed on January 16, 1962, which was after the adjournment of the term at which the case was tried, about six months after the entry of the final judgment and without a proper extension of time in which to obtain said bills of exceptions.

Rule 80 (f) of the West Virginia Rules of Civil Procedure abolished bills and certificates of exceptions in cases governed by such rules with the qualifications and exceptions contained in Rules 81 and 86, R.C.P. Under the provisions of Rule 80, R.C.P., it is only necessary for the official court reporter to duly certify the transcript of the proceedings and file it with the Court. Although the record indicates that this case was tried by agreement under the old procedure and bills of exceptions were relied upon and obtained by the defendant for the purpose of this appeal, the record does not indicate that the trial court was of the opinion that the New Rules would not be feasible in this instance, as provided for in Rule 86, R.C.P.

In view of the provisions contained in Rule 86 regarding the application of the new rules of Civil Procedure, we will consider such rules as applicable to this appeal. *Montgom-*

*ery* v. *Montgomery,* 147 W. Va. 449, 128 S. E. 2d 480, (advance sheet).

The next matter to be discussed before going into the merits of the case at bar is the motion of the defendant Blankenship to dismiss this action as to him because the Circuit Court of Mercer County did not have jurisdiction to try the case after the plaintiff voluntarily dismissed from the action, with prejudice, the defendant Landreth who was the only defendant being a resident of Mercer County. It is the contention of the defendant that the Circuit Court of Mercer County should have declared a mistrial and dismissed the action as to all the non-resident defendants after the resident defendant had been dismissed from the action, because then the court lost jurisdiction of the case.

In the first place, the matter involved in this motion is not jurisdiction in its broad sense, but is venue. *Hall* v. *The Ocean Accident and Guarantee Corp., Ltd.,* 122 W. Va. 188, 9 S. E. 2d 45; *State ex rel. Chemical Tank Lines, Inc.* v. *Davis, Judge,* 141 W. Va. 488, 93 S. E. 2d 28. Jurisdiction deals with the power of the court while venue deals with the place in which an action may be tried. This Court stated in the Davis case: "Venue designates the county or place in which a court having jurisdiction may properly hear and determine the case." It is true that venue in the instant case was only obtained by virtue of the fact that the defendant Landreth was a resident of Mercer County. Code, 56-1-1; *Staats* v. *Co-operative Transit Co.,* 125 W. Va. 473, 24 S. E. 2d 916.

Before the New Rules became effective in this State, this case had been pending for a period of eleven months. During such period, it was necessary to raise the question of venue by a plea in abatement which had to be filed at the next succeeding rules following the rules at which the declaration was filed, or the matter was considered waived. 1 M. J., Abatement etc., §21; *Robinson* v. *Engle,* 107 W. Va. 598, 149 S. E. 836; *Hall* v. *Guarantee Corp., supra; Gunnoe.* v. *West Virginia Poultry Ass'n.,* 115 W. Va. 87, 174 S. E. 691; *Staats* v. *Co-operative Transit Co., supra.*

However, Rule 7(c) of the Rules of Civil Procedure abolishes pleas in abatement and substitutes motions therefor. Rule 12(b), R.C.P.

Because of the circumstances involved, the time of the dismissal of the defendant Landreth, who was the only resident of Mercer County during the trial of this case, and considering Rule 15(d) in connection with Rule 12(b), giving full effect to Rule 86, R.C.P., we will consider the motion to dismiss as a proper method of raising the question of venue in the case presented here. However, Rule 5(a), R.C.P., requires that every written motion such as is involved herein must be served on the parties affected thereby; and Rule 5(d) requires that such motion, after it is served, shall be filed with the court within a reasonable time with an endorsement thereon, or appended thereto, containing a certificate by the attorney or the party that the paper was served in the manner prescribed by Rule 5, or a certificate of acceptance of service by the party to be served and requires that such certificate must show the date and method of service or the date of acceptance of service. The record in this case fails to show that such motion was served on the parties affected, and no certificate of service, as required by Rules of Civil Procedure is contained in the record. Therefore, this motion does not comply with the provisions of the Rules of Civil Procedure, for such motions. In any event, the matter involved in the motion to dismiss had merit, and if timely taken advantage of, would have required a dismissal of this case from the Circuit Court of Mercer County, because such Court lost venue when the only resident defendant was dismissed therefrom and the action abandoned as to him. *Gunnoe* v. *West Virginia Poultry Ass'n.*, *supra; Staats* v. *Co-operative Transit Co.*, *supra.*

As hereinbefore stated, the record in this case shows that Landreth, the resident defendant of Mercer County, was dismissed from this action on motion of the plaintiff during the trial of the case on August 31, 1960, that the defendant Blankenship did not object thereto and proceeded with the trial of the case on its merits, introducing all of his evidence and that after the jury had returned a verdict in the amount

of $10,000.00 against him, he made a motion to set aside the verdict. After a full hearing thereon, the trial court overruled said motion on January 10, 1961. The motion in question to dismiss was filed on February 17, 1961. Therefore, the matter raised in this motion was waived by the defendant by submitting to the jurisdiction of the court in the trial of the case on the merits and not raising the question of venue until over five months after the verdict of the jury had been returned and the motion made to set aside the verdict. The Circuit Court of Mercer County had jurisdiction of the subject matter and venue deals with jurisdiction of the person. The former cannot be conferred by consent or waiver, but the latter may be. *McConaughey & Co.* v. *Bennett's Ex'rs.*, 50 W. Va. 172, 40 S. E. 540; *State ex rel. Hammond* v. *Worrell, Judge*, 144 W. Va. 83, 106 S. E. 2d 521.

This Court held in the case of *Hall* v. *The Ocean Accident and Guarantee Corp.*, Ltd., 122 W. Va. 188, 9 S. E. 2d 45, that: " * * * the right of a defendant touching the county of trial is not primarily jurisdictional, but is a personal privilege which may be waived * * * Where the court has jurisdiction of the subject matter, the failure of a defendant to claim the privilege *in the proper manner* implies a waiver." When the defendant Blankenship proceeded with the trial of the case without raising the question of venue in any manner, and after the jury returned a verdict against him made a motion five months later to set it aside, he subjected himself to the jurisdiction of the court to the trial of the case on the merits. This constituted a waiver of the right to object to the venue, which is merely jurisdiction of the person. 92 C.J.S., Venue, §124; *Hall* v. *Guarantee Corp., supra; Berger* v. *Noble*, 81 Ga. App. 759, 59 S. E. 2d 761; *Stevens* v. *Gilliam*, 220 Ark. Rep. 867, 251 S. W. 2d 241. Then, too, Rule 12 (d), R.C.P., provides in effect for such motion to be heard and determined before disposition of the case on its merits. Therefore, the action of the trial court was proper in overruling the motion of the defendant Blankenship to dismiss the action as to him.

The questions dealing with jurisdiction and venue having been disposed of, we will now take up and discuss the merits of the case.

It is the contention of the defendant Blankenship that the fatal injuries received by the plaintiff's decedent were due solely to the negligence of the defendant Rose and appellant therefore is not liable in any manner.

There is no question, from the evidence in this case, that the defendant Rose was guilty of negligence as a matter of law. The evidence clearly indicates that he was driving his 1954 Dodge pick-up truck at a fast rate of speed in a curve on the highway, that he crossed onto the wrong side of the road and ran into the 1956 Ford truck owned by the defendant, Model Furniture Company, which was being driven on its proper side of the highway by the defendant, Landreth, striking it with tremendous force while it was stopped, or almost at a standstill. The jury found a verdict against the defendant Rose, judgment was entered thereon, no appeal from the judgment was taken and it has become final. This fact however does not relieve the defendant Blankenship from liability if he was guilty of any negligence which proximately contributed to the fatal injuries of the plaintiff's decedent, because where two or more persons are guilty of negligence which occurs in point of time and place, and together proximately cause or contribute to the injuries of another, they are guilty of concurrent negligence and recovery may be had against both or all of them. *Sigmon v. Mundy*, 125 W. Va. 591, 25 S. E. 2d 636; *Wilson v. Edwards*, 138 W. Va. 613, 77 S. E. 2d 164; *Lewis v. Mosorjak*, 143 W. Va. 648, 104 S. E. 2d 294; *Clay v. Walkup*, 144 W. Va. 249, 107 S. E. 2d 498.

It was held in point 2 of the syllabus in the case of *Lewis v. Mosorjak, supra,* that: "Whether the negligence of two or more persons is concurrent, and taken together proximately causes or contributes to the injury of another person is, as to all matters of fact, a question for jury determination and a verdict of a jury based upon facts will not be disturbed if it is supported by substantial evidence."

The evidence in this case also clearly shows that the defendants Landreth and the Model Furniture Company were not guilty of any negligence as a matter of law, because the truck driven by Landreth which was owned by the Model

Furniture Company was on its proper side of the highway, and to the right thereof, at either a standstill or practically a standstill when it was struck by the Rose truck which was being driven on the wrong side of the road. The trial court, when proper motion was made on behalf of these defendants, should have either dismissed them from the case or directed a verdict in their favor before the settlement was made on behalf of these two defendants whereby they were dismissed from the case on motion of the plaintiff. This situation still does not relieve the defendant Blankenship from liability if he was guilty of any act or omission constituting negligence which proximately contributed to the injuries received by plaintiff's decedent resulting in her death. *Sigmon* v. *Mundy, supra; Wilson* v. *Edwards, supra; Lewis* v. *Mosorjak, supra; Clay* v. *Walkup, supra.*

The evidence of the plaintiff and of the defendant in this case which deals with the question of negligence on the part of the defendant Blankenship is conflicting. The plaintiff's evidence indicates that Blankenship was driving his vehicle at an excessive rate of speed under the facts and circumstances in the instant case, that he was driving too close to the rear of the truck operated by Landreth, that he did not have proper control of his vehicle in order to avoid running into the rear of the Landreth truck, and that these acts or omissions on his part resulted in his automobile striking the rear of the Landreth truck with almost the same force as that of the Rose truck when it hit the front of the Landreth truck, thus causing the plaintiff's decedent to be thrown against the rear of the cab of the truck in which she was a passenger and causing injuries to the back of her head which resulted in or contributed to her death.

The evidence of the defendant Blankenship was to the effect that he was driving his automobile carefully at a proper speed about three or four car lengths behind the Landreth truck immediately preceding the accident, that he stopped his vehicle before running into the rear of the Landreth truck, and said truck was knocked back into the front of his automobile when the Rose truck hit the front of the Landreth truck, which resulted in Blankenship's

automobile being three to four feet behind the Landreth truck following the accident.

The plaintiff's evidence tended to show that if the Blankenship vehicle had been stopped or had come to rest before being struck by the rear of the Landreth truck it would have been knocked back a greater distance than just a few feet as indicated by the defendants' evidence by virtue of the force exerted by the Landreth truck on the defendant's automobile when the Rose truck struck the front of the Landreth truck. In cases where the evidence is conflicting and reasonable men may draw different conclusions, the question of negligence is for the jury. *Lewis* v. *Mosorjak, supra; Clay* v. *Walkup, supra; Leftwich* v. *Wesco Corp.,* 146 W. Va. 196, 119 S. E. 2d 401; *Butler* v. *Smith Transfer Corp.,* 147 W. Va. 402, 128 S. E. 2d 32. (advance sheet).

The plaintiff's decedent's death was caused from injuries to her head as a result of the accident. If she received injuries to the front of her head as a result of the Rose truck striking the truck in which she was riding, and severe injuries to the back of her head as a result of the defendant Blankenship's automobile striking the rear of the truck in which she was a passenger, which there is evidence in this case to support, both the defendant Rose and the defendant Blankenship would be guilty of negligence which proximately caused or contributed to the death of plaintiff's decedent, and although the evidence may be conflicting, it is a case for jury determination, and in such a case a jury verdict will not be disturbed if there is sufficient evidence to support it. *Sigmon* v. *Mundy, supra; Lewis* v. *Mosorjak, supra; Clay* v. *Walkup, supra; Butler* v. *Smith Transfer Corp., supra.*

The recent case of *Butler* v. *Smith Transfer Corp., supra,* is quite similar to the one presented here. In the *Butler* case there was no question about the negligence of one Riley. His automobile was driven across onto the wrong side of the road striking the Smith Transfer truck, after which the Smith Transfer truck ran into and damaged the plaintiff's house. Notwithstanding the negligence of Riley, it was held that the Smith Transfer Company was also guilty of

negligence under the circumstances, and that both were guilty of concurrent negligence resulting in the damage to plaintiff's property, and recovery was allowed against the Smith Transfer Company.

The case of *Clay* v. *Walkup, supra,* involved the same question of concurrent negligence in which there was no question regarding the negligence of one defendant, but the evidence indicated that another defendant in point of time and place could also be guilty of negligence, and recovery was allowed against the latter defendant. Recovery was also allowed in the *Mosorjak* case in which the same question was involved.

It is the contention of the defendant Blankenship that even if he was guilty of any negligence the negligence of Rose was an intervening cause of the plaintiff's decedent's injuries and which, in any event, would relieve him of liability. This position is not well taken. An intervening cause in order to relieve a person charged with negligence in connection with an injury must be a negligent act, or omission, which constitutes a new effective cause and operates independently of any other act, making it and it only, the proximate cause of injury. *Wilson* v. *Edwards, supra; Hartley* v. *Crede,* 140 W. Va. 133, 82 S. E. 2d 672. Such intervening cause is not present in the case at bar as far as the negligent acts of Rose are concerned. Rose's negligence was the original negligence in connection with this accident and did not constitute a new effective cause, which intervened after any negligent acts on the part of Blankenship.

In the case of *Riddle* v. *Artis,* 246 N. C. 629, 99 S. E. 2d 857, cited by the defendant in his brief to support his contention that he should not be found guilty of negligence which caused the plaintiff's decedent's injuries, the facts are quite similar to the case at bar. However, in the *Riddle* case the facts indicated, and it was so found, that the plaintiff's injuries were caused by the first collision, and that the second collision did not proximately cause or contribute to the injuries in any manner. In that case the plaintiff testified that as far as he knew all of the injuries he received were a consequence of the contact or collision with the first

car. Here we have an entirely different situation, because it is contended by the plaintiff, and supported by evidence, that negligent acts on the part of both the defendant Rose, in the first collision, and the negligent acts on the part of the defendant Blankenship, in the second collision, were together responsible for the injuries to plaintiff's decedent, thus constituting concurrent negligence on the part of both Rose and Blankenship.

The defendant Blankenship objected to all of the testimony given by Clarence S. Bruce.. Bruce testified on behalf of the plaintiff as an expert witness. The defendant Blankenship refers to this witness as a "so-called expert". This witness's qualifications which are contained in detail in the record of this case would qualify him as an expert as a "traffic accident analyst". He had certain knowledge and experience not possessed by the general public in connection with the matters or questions involved in his testimony. This would be sufficient to classify him as an expert witness. 32 C.J.S., Evidence, §457; 20 Am. Jur., Evidence, §775; *Lewis* v. *Mosorjak*, 143 W. Va. 648, 667, 104 S. E. 2d 294. This same witness is referred to as an expert witness in the case of *Kale* v. *Douthitt*, 274 F. 2d 476, cited by the defendant. This Court held in the case of *Lawrence* v. *Nelson*, 145 W. Va. 134, 113 S. E. 2d 241, that it would appear that the same witness was qualified to answer a proper hypothetical question in the field of his training and experience. Therefore, the objection of the defendant to this witness testifying as an expert witness was properly overruled by the trial court. However, if proper hypothetical questions were not propounded to this expert witness, his answers would be incompetent and subject to objections made by the defendant. In the hypothetical question asked this witness on behalf of the plaintiff certain factors were omitted which should have been included in a proper hypothetical question for an exact answer, and some facts were assumed in answering this question by the expert witness which were not contained in the record at the time the questions were asked. The omitted factors involved were the exact weights of the vehicles, the weights of the passengers in each vehicle and any additional weight contained in each vehicle over

and above the vehicle itself. However, in the cross examination of this witness by the defendants' attorney, most of the missing elements were furnished by assumed facts supported by the evidence of either the plaintiff or the defendants and testimony of the expert witness within his personal knowledge. The defendant asserts in support of his contention that this witness's testimony was improper or incompetent in that the answers given by this witness were not the same. The reason the answers given by this witness were not the same was because they were based on different assumed facts. It is true that the hypothetical questions asked by the plaintiff's attorney on direct examination were not proper, because certain facts were omitted therefrom and this Court does not approve of such hypothetical questions being used, and any objection made to such questions should be sustained by a trial court. However, as indicated herein, the cross-examination by the defendant's attorney, which was quite lengthy, furnished most of the missing factors, with a few minor exceptions, such as the exact weight of the passengers in the vehicles and the exact weight of the oil, water, gas and any other material contained in each vehicle, but under the circumstances as outlined herein, the defects in the hypothetical questions would not be material to the answers in general as applied to the facts and circumstances in the instant case.

The entire testimony of the expert witness was based on the principles of dynamics and the application of Newton's Laws of Motion. The mere fact that there was an omission in a hypothetical question of a small amount of weight relative to the people and contents of the vehicles when several tons were used in the computation and the answers in each instance were given as a minimum would not materially affect such answers for the purpose used. The expert's testimony, boiled down, amounted to merely an application of the force applied by the Rose truck to the Landreth truck and the resultant force applied to the Blankenship automobile.

The defendant cites the case of *Kale* v. *Douthitt, supra,* in which the answer of the same expert witness to a hypo-

thetical question, in connection with an automobile, was held by the court to be incompetent. However, in that case certain material facts were omitted from the hypothetical question which were not later supplied, but even so the witness calculated the exact speed of the defendant's automobile at the time the accident occurred. In the instant case the speed was given in the hypothetical question, and also the conditions of the road at the time of the accident, as well as many other facts omitted in the case cited by the defendant. In the *Kale* case it was held that the expert's testimony was incompetent because the hypothetical question omitted material facts which were essential for the expert to give an opinion as to the speed of the defendant's car. In the case at bar the facts omitted were not material to the overall finding of the minimum distance the defendant's automobile would have been knocked back by the force applied by the Rose truck. Then, too, in the instant case, the jury was allowed to draw conclusions from the expert's testimony to the effect that if the Rose truck struck the Landreth truck at the speed assumed, based on the evidence of the case, then the Landreth truck went back against the Blankenship car and it would have knocked the Blankenship car back farther than that testified to by the defendant Blankenship if he was at a standstill or driving at a speed contended by him, but that if there was merely a distance of a few feet between the Landreth truck and the Blankenship car, then the jury could conclude that Blankenship was driving at a much greater rate of speed than he testified to and rammed into the rear of the Landreth truck, as testified to by the plaintiff's witnesses, and rebounded a mere few feet on account of the "coefficient of restitution", (that is, as applied here, the tendency of elastic metal to bounce back to its original form and spring the cars apart).

Although not properly initially submitted to the expert witness, it appears from the record presented in this case by both direct and cross-examination and by exhibits which were admitted into evidence and given to him that the expert witness considered the overall weight of the vehicles, conditions of the road, angle of impact, coefficient of friction and grade or angle of incline. Hypothetical questions should

be based on evidence in the case and should take into consideration all facts necessary for an intelligent answer. *City of Portsmouth* v. *Culpepper,* 192 Va. 362, 64 S. E. 2d 799. Although the hypothetical questions propounded on behalf of the plaintiff were improper and constituted error, this Court is of the opinion that under the facts and circumstances surrounding and connected with this question and considering the entire testimony of the witness Bruce, as contained in both direct and cross-examination, as well as in connection with the other evidence in the case, that it was not reversible error.

The defendant Blankenship contends that it was reversible error on the part of the trial court to admit into evidence over his objection certain photographs, one of the place of plaintiff's decedent's employment and other photographs taken immediately following the wedding ceremony. The objection to these photographs was well taken as they were not necessary in the trial of this case and the trial court would have been entirely justified in excluding them from the evidence. However, the admission into evidence of photographs in connection with a trial of a case rests in the sound discretion of the trial court, and its ruling thereon will be upheld unless it is clearly shown that such discretion was abused. *State* v. *Woolridge,* 129 W. Va. 448, 40 S. E. 2d 899. The case of *O'Meara* v. *Haiden,* (Cal.) 268 P. 334, 60 A.L.R. 1381, cited by the defendant in support of this assignment held that the admission of a photograph of the deceased in a wrongful death action was harmless error and even though the deceased's mother wept in front of the jury as she identified her son's picture, the overall evidence in the case indicated negligence on the part of the defendant and the introduction of such photograph was held not to be reversible error in such case. We are of the opinion that even if the trial court committed error in this connection, under the facts and circumstances of this case, the admission of the photographs into evidence did not constitute reversible error. See 74 A.L.R. 2d 932, Wrongful Death, §§4, 5.

The defendant also assigns as error the admission over his objection of evidence of the reputation or good character

of the plaintiff's decedent. Ordinarily, evidence of the good character or reputation of a party in a civil action is not admissible. *Lawrence* v. *Nelson,* 145 W. Va. 134, 113 S. E. 2d 241. The defendant states in his brief that this evidence was introduced by Reverend A. H. Roe and Mrs. Georgia Costa over his objection, but the evidence of these two persons was omitted by stipulation from the printed record in this case, and the only reference in the printed record as to the good character or reputation of plaintiff's decedent is a statement made by counsel for the defendant Blankenship at the time her brother was being used for this purpose during the trial, wherein it was stated that: " * * * as far as Mr. Blankenship is concerned, we will admit on the record that the character of Mrs. Lester was good and above reproach.", which would be considered an agreement for the use of such evidence. We therefore find no reversible error in connection therewith. See *Butler* v. *Smith's Transfer Corp.,* 147 W. Va. 402, 128 S. E. 2d 32. (advance sheet).

The assignment of error by the defendant with regard to instructions offered by the plaintiff and given by the court over the objection of the defendant, and instructions offered by the defendant and refused by the court, with the exception of instruction 6A offered by the plaintiff and given by the court over the objection of the defendant, and instruction number 12 offered by the defendant and refused by the court, is based on the defendant's contention that the evidence did not warrant the giving or refusing of such instructions because of the law applicable thereto relating to the negligence of the defendant Blankenship.

We have heretofore discussed this matter in detail and hold that the evidence with regard to the question of negligence on the part of the defendant Blankenship in connection with the accident involved in this case was proper under the facts and circumstances in this case, to be submitted to the jury. We therefore find no error on the part of the trial court in the giving or refusing of the instructions relative thereto.

Instruction 6A, offered by the plaintiff and given by the court over the objection of the defendant, and instruction

12, offered by the defendant and refused by the court, deal with a different matter. These instructions were on the question of damages. Plaintiff's instruction 6A told the jury that if it found that the plaintiff was entitled to damages it could take into consideration pecuniary loss, sorrow, suffering and mental anguish occasioned by the plaintiff in connection with the death not to exceed the amount of $10,000.00, unless it believed from a preponderance of the evidence that the plaintiff had suffered pecuniary loss in excess of $10,000.00, in which event the award could not exceed $20,000.00. Defendant's instruction 12 would have told the jury that if it found a verdict for the plaintiff, it could not return a verdict in excess of $10,000.00.

It is the contention of the defendant that instruction 6A was erroneous, and instruction 12 proper, because there could not be any pecuniary loss in the case at bar since the Married Women's Act provides that plaintiff's decedent was entitled to all of her own property, and further that there was no pecuniary loss proved. The record indicates that the attorney for the plaintiff contended that the evidence proved pecuniary loss and the trial court was of the opinion that there was sufficient proof contained in the evidence to prove pecuniary loss, but such evidence, which was apparently given by the plaintiff, was omitted from the printed record by stipulation. In any event, the statute in effect at the time this case was tried, Code, 55-7-6, as amended, provides: "In every such action the jury may give such damages as they shall deem fair and just, not exceeding ten thousand dollars: Provided, however, if the plaintiff in such action shall prove by a preponderance of the evidence financial or pecuniary loss sustained by a distributee or distributees of such deceased person in an amount exceeding the sum of ten thousand dollars the jury may give such damages as shall equal such financial or pecuniary loss, not exceeding twenty thousand dollars * * * ".

Before the statute was amended in 1955, it merely provided that a jury could give such damages in such cases as they deemed fair and just, not exceeding $10,000.00. This Court, in construing that statute, held on numerous occa-

sions that it was not necessary to prove pecuniary damages for a recovery in such cases up to $10,000.00, and that it could be based on sorrow, mental distress and bereavement. *Searles* v. *Kanawha & Ohio Railway Co.*, 32 W. Va. 370, 9 S. E. 248; *Kelley* v. *Ohio River Railroad Co.*, 58 W. Va. 216, 52 S. E. 520, 2 L.R.A. (NS) 898; *Yeater* v. *Jennings Oil Company*, 75 W. Va. 346, 84 S. E. 904; *Utt* v. *Herold*, 127 W. Va. 719, 34 S. E. 2d 357. Recovery in such cases was not based on the fact that the distributee had to be a dependent of the deceased. *Kelley* v. *Ohio River Railroad Co.*, *supra*. When the statute was amended in 1955, it provided that where pecuniary loss was sustained by the distributee or distributees and proved by a preponderance of the evidence, recovery exceeding the amount of $10,000.00 could be had for such pecuniary loss not exceeding $20,000.00. *Stamper* v. *Bannister*, 146 W. Va. 100, 118 S. E. 2d 313.

It is clear that the amendment to this statute was not intended to limit but rather to increase the right of recovery in wrongful death actions. If it was now held that it is necessary to prove pecuniary loss in order to recover any damages in the part pertaining to the $10,000.00 limit of recovery, it would decrease the right of recovery heretofore allowed under the exact wording of this part of the statute and would be contrary to the prior decisions of this Court. *Searles* v. *Railway Co.*, *supra*; *Kelley* v. *Ohio River Railroad Co.*, *supra*; *Yeater* v. *Jennings Oil Company*, *supra*; *Utt* v. *Herold*, *supra*. In other words, the amendment to Code, 55-7-6, in 1955 did not change the law relative to recovery in such cases wherein the jury could give damages as they deemed fair and just not exceeding $10,000.00, without proof of any pecuniary loss whatsoever, because the wording in the statute allowing such recovery was verbatim as contained in the statute before it was amended up to the proviso with regard to the proof of pecuniary loss, and then limited recovery in such cases to another $10,000.00 if pecuniary loss could be proved under the terms of the statute. Before the amendment of Code, 55-7-6, in 1955, financial or pecuniary loss was not contained in the statute and a recovery not exceeding $10,000.00 was allowed without proof with regard to financial or pecuniary loss, and any amount given

by the jury within the limits prescribed by the statute was held not to be excessive. *Kelley* v. *Ohio River Railroad Co.*, 58 W. Va. 216, 223, 52 S. E. 520, 2 L.R.A. (NS) 298; *Wigal* v. *City of Parkersburg*, 74 W. Va. 25, 34, 81 S. E. 554, 52 L.R.A. (NS) 465; *Yeater* v. *Jennings Oil Company*, 75 W. Va. 346, 353, 84 S. E. 904.

When the statute was amended financial and pecuniary loss with an additional limit was inserted after the original limit allowing recovery not to exceed $10,000.00 as heretofore referred to in the statute, and the additional limit only referred to the recovery in such cases where financial or pecuniary loss was proved by a preponderance of the evidence, in which case the total recovery was limited to $20,000.00. If financial or pecuniary loss was not proved recovery was still limited to $10,000.00, as it was before Code, 55-7-6, was amended in 1955. This construction of the statute is consistent with the decisions of this Court and with decisions of other courts in connection with such statutes where pecuniary loss is referred to in the statute. See *Searles* v. *Kanawha & Ohio Railway Co., supra; Wigal* v. *City of Parkersburg*, 74 W. Va. 25, 34, 81 S. E. 554, 52 L.R.A. (NS) 465.

It is stated in the defendants' brief that instruction 6A left the jury with the impression that if they found for the plaintiff they could find up to the sum of $20,000.00, regardless of whether the plaintiff had sustained a pecuniary or financial loss. This statement is not supported by the record and is incorrect. This instruction, after telling the jury that if they found for the plaintiff the damages could not exceed $10,000.00, concluded with the following language: " * * * unless you believe from a preponderance of the evidence that the plaintiff has suffered a pecuniary loss in excess of $10,000.00, then you may award the plaintiff the amount so proved not to exceed the amount sued for $20,000.00."

Therefore, Instruction 6A, given by the trial court in this case, did not constitute error, although it is unartfully worded, and it also follows that the refusal to give instruction 12, offered by the defendant and refused by the court, which would have limited any verdict of the jury to

$10,000.00 was not error. The jury only returned a verdict in the amount of $10,000.00 in this case and therefore, the assignment of error in connection with this instruction is not well taken because the jury did nevertheless what the instruction would have directed. It could not be prejudicial error. "Where the verdict accords with both the law and the evidence, all errors committed in the course of the trial are rendered harmless." 1 M. J., Appeal and Error, §287.

For the reasons stated herein, the judgment of the Circuit Court of Mercer County is affirmed.

*Affirmed.*

CALHOUN, JUDGE, dissenting in part:

I respectfully dissent in relation to that portion of the majority opinion which is summarized in the twenty-third point of the syllabus. I believe that the Court has made a wholly unwarranted construction of Code, 1931, 55-7-6, as amended by Chapter 1, Acts of the Legislature, Regular Session, 1955. A statement of my views calls for a brief review of the statute and the amendments thereof.

Since the early days of the state's history to the present our wrongful death statutes have contained the following language: "In every such action the jury may give such damages as they shall deem fair and just, not exceeding * * *." Some of the history of the West Virginia statute is stated in *Pegram* v. *Stortz*, 31 W. Va. 220, 316, 317, 6 S. E. 485, 537, 538. Our first statute (Acts, 1863, Chapter 98) limited a jury to an award of damages "with reference to the pecuniary injury resulting from such death." In 1868 the statute was amended to include its present language which authorizes the jury to award "such damages as they shall deem fair and just", but not exceeding $5,000 and the restriction to "pecuniary injury" was eliminated. In 1882 the statute was amended so as to increase the maximum award to $10,000. The foregoing history of the statute is stated in *Kelley* v. *Ohio River Railroad Co.*, 58 W. Va. 216, 223, 224, 52 S. E. 520, 523, in which case the second point of the syllabus points out that under the language then and now in the statute a jury, in awarding damages, is no longer

"confined to compensative damages for mere pecuniary injury, but may consider the sorrow, the mental distress and bereavement of the" beneficiary of the award. The language of the statute remained unchanged from 1882 until 1955.

The point I am undertaking to make is that the 1955 amendment did not add a new element of damages in the form of "financial or pecuniary loss sustained by a distributee or distributees of such deceased person." On the contrary, such items of damage were recoverable at all times from 1868 to the effective date of the 1955 amendment. This construction which even prior to 1955 permitted a recovery of damages to include financial or pecuniary loss to distributees has been followed and adhered to by the Court in many subsequent decisions. *Wigal, Adm'x* v. *City of Parkersburg,* 74 W. Va. 25, pt. 6 syl., 81 S. E. 554; *Yeater, Admr.* v. *Jennings Oil Co.,* 75 W. Va. 346, 349, 350, 84 S. E. 904, 905; *Morris' Adm'x* v. *The Baltimore and Ohio Railroad Co.,* 107 W. Va. 97, 108, 147 S. E. 547, 551; *Black, Administrator* v. *Peerless Elite Laundry Co.,* 113 W. Va. 828, pt. 3 syl., 169 S. E. 447; *Stamper* v. *Bannister,* 146 W. Va. 100, 118 S. E. 2d 313, 317. The 1955 amendment did not broaden or otherwise alter the basic cause of action or the right to recover. It did not add a new element of damages proper for jury consideration. It merely increased the maximum amount recoverable in a restricted situation which is defined in the language of the amendment. Our inquiry leads logically, therefore, to an examination of the restricted situation in which such additional sum may properly be recovered. We need not cite authority for the obvious proposition that a plaintiff in a wrongful death action can have no right, except as authorized by statute.

The 1955 amendment included a proviso in the following language: *"Provided, however,* If the plaintiff in such action shall prove by a preponderance of the evidence financial or pecuniary loss sustained by a distributee or distributees of such deceased persons *in an amount exceeding the sum of ten thousand dollars,* the jury may give *such damages as shall equal such financial or pecuniary loss,* not exceeding twenty thousand dollars as the total of all damages recoverable in such action, * * *."  (Italics supplied).

In what restricted circumstances may the jury return a verdict in excess of the basic sum of $10,000? The statute in clear and unmistakable language states that such additional recovery is permissible only if the plaintiff proves by a preponderance of the evidence financial or pecuniary loss sustained by a distributee or by distributees of such deceased person *"in an amount exceeding the sum of ten thousand dollars."* (Italics supplied). It is clear beyond all question from the statutory language that the right to recover an additional sum does not accrue except upon proof of a financial or peuniary loss "in an amount exceeding the sum of ten thousand dollars." If a plaintiff proves by a preponderance of the evidence that he is entitled to recover a sum in excess of the basic sum of $10,000, to what amount is the recovery restricted by the statutory language? The statute in clear and unmistakable language states that the sum recoverable in such a situation shall be restricted to *"such damages as shall equal such financial or pecuniary loss,* not exceeding twenty thousand dollars as the *total of all damages* recoverable in such action, * * *."* (Italics supplied). It is clear beyond question from such statutory language that in no situation can the recovery in excess of $10,000 be in a sum greater than the total amount of the financial or pecuniary loss proved.

In an opinion handed down by this Court simultaneously with the majority opinion in this case, the Court stated: "When a statute is clear and unambiguous and the legislative intent is plain the statute should not be interpreted by the court, and in such case it is the duty of the court not to construe but to apply the statute." *J. D. Moore, Inc.* v. *C. Howard Hardesty, Jr., State Tax Commissioner*, pt. 1 syl., (decided February 26, 1963). The principles stated in that syllabus point have been reiterated by this Court in cases almost without number. Similar rules of construction have been applied in cases involving written contracts of various sorts and cases involving constitutional provisions. *Cotiga Development Co.* v. *United Fuel Gas Co.,* 147 W. Va. 484, 128 S. E. 2d 626; *In re Hillcrest Memorial Gardens, Inc.,* 146 W Va. 337, 119 S. E. 2d 753, 759.

While I feel that the statutory language in question is clear and unambiguous and that therefore we are not permitted to construe it but must apply it in accordance with its plain terms, it is interesting to note that the legislature in 1961 apparently regarded the language of the statute as I do. In amending the statute now under consideration by Chapter 2, Acts of the Legislature, Regular Session, 1961, the legislature, after reenacting the provision pertaining to the basic sum of $10,000, provided that a jury "may give such *further* damages as shall equal such financial or pecuniary loss * * *." (Italics supplied). The word "further" is new by virtue of the 1961 amendment and apparently was designed to accomplish by statutory enactment a portion of that which the majority has accomplished, as I believe, by unwarranted judicial construction. The 1961 amendment also provides: "In every case in which the jury shall give damages for financial or pecuniary loss in such action, the jury shall state in their verdict the part thereof given for such financial or pecuniary loss." This portion of the amendment obviates a difficulty I perceive in relation to the majority opinion in this case which involves the statute as it existed prior to the 1961 amendment.

I find no language in the opinion in *Stamper* v. *Bannister,* 146 W. Va. 100, 118 S. E. 2d 313, at variance with the views I have expressed herein; otherwise I would have dissented at that time, because I then held and expressed the same views as I now entertain and have undertaken herein to express. The fourth point of the syllabus of that case merely states that if the distributee or distributees will suffer or have sustained a financial or pecuniary loss "evidence of such elements of damage is admissible in such actions." The latter part of the opinion contains the following language: "* * * and if proved by a preponderance of the evidence, the jury could give such damages for such pecuniary loss not exceeding the total of twenty thousand dollars for all damages recoverable in such actions."

For reasons stated, I believe that it appears unmistakably from clear and unambiguous language of the statute that under no circumstances is a jury warranted in returning a

verdict for a sum in excess of $10,000 unless "the plaintiff in such action shall prove by a preponderance of the evidence financial or pecuniary loss sustained by a distributee or distributees of such deceased person in an amount exceeding the sum of ten thousand dollars;" and even in such a situation the maximum verdict may be only "such damages as shall equal such financial or pecuniary loss." Apparently this is the construction which, at the trial, was placed on the statute by the court and by counsel for the plaintiff. Plaintiff's Instruction No. 6A, with emphasis supplied, concludes as follows: "* * * not to exceed the amount of $10,000.00, unless you believe from a preponderance of the evidence that the *plaintiff* [the husband and sole distributee] has suffered a *pecuniary loss in excess of $10,000.00,* then you may award the plaintiff *the amount so proved* not to exceed the amount sued for $20,000.00." The twenty-third point of the syllabus would authorize a verdict in excess of $10,000, if plaintiff proved financial or pecuniary loss in any amount whatsoever.

When the language of a statute is clear and unambiguous, we are not at liberty to indulge in speculation as to what the legislature may have meant to express but did not express. The majority opinion, in a process of reasoning which I am unable to follow, seems to proceed from the basic premise that, prior to the 1955 amendment, a jury was warranted in awarding a verdict for $10,000 in the absence of proof of any financial or pecuniary loss to a distributee. Beyond question that was true; but the statute did not guarantee such sum or any other sum to a plaintiff. The discretion of the jury as to the amount of the award was almost absolute and uncontrollable, regardless of damages, pecuniary or otherwise, the plaintiff might prove. *Legg, Adm'r* v. *Jones,* 126 W. Va. 757, 30 S. E. 2d 76. Proceeding from its major premise, and in an effort, as I view it, to discern the legislative intent apart from the plain language itself, the majority opinion states: "If it was now held that it is necessary to prove pecuniary loss in order to recover any damages in the part pertaining to the $10,000.00 limit of recovery, it would decrease the right of recovery heretofore

allowed under the exact wording of this part of the statute and would be contrary to the prior decisions of this Court."

As stated earlier herein, the concluding portion of plaintiff's Instruction No. 6A authorized the jury to determine whether plaintiff had proved pecuniary loss in excess of $10,000 and to award a verdict equal to the total of such pecuniary loss, not exceeding $20,000. Counsel for Blankenship, defendant, objected to the instruction on the ground that there was no proper proof of financial or pecuniary loss sustained by the husband as distributee. The court refused an instruction offered in behalf of Blankenship which would have told the jury that "they cannot return a verdict in excess of the sum of $10,000." From statements made by the trial judge and by counsel for the plaintiff at the time instruction 6A was offered, the only evidence tending to show financial or pecuniary loss was testimony that the decedent was employed at the time of her death and that she and her husband placed their earnings in a common bank account. In support of that portion of the instruction, counsel for plaintiff states in his brief: "* * * the plaintiff testified that he and the deceased were putting their money in an account so as to pay for their trailer and other debts." It was stipulated by counsel that all parts of the record designated as not to be printed may remain in the office of the clerk of this Court while this case is pending where the same may be referred to by counsel in argument "and by the Court in deciding this case, if it so desires." By the same stipulation, counsel stated that they "designate that the complete record in this case be sent to the Supreme Court of Appeals * * *." In these circumstances, the majority opinion states in relation to such alleged proof of financial or pecuniary loss: "* * * but such evidence, which was apparently given by the plaintiff, was omitted from the printed record by stipulation."

The testimony discloses that the decedent, immediately prior to her death, was earning $46.06 per week. The husband testified that he and his wife pooled their earnings in pursuance of their plan to buy a trailer. It does not appear that the husband was to become the owner of the contem-

plated trailer. It does not appear that the two persons placed their funds in a joint bank account with rights of survivorship. Counsel for Blankenship pointed out in the trial court and in this Court that Code, 1931, 48-3-1, provides that all property and income owned or acquired by a married woman "shall be and remain her property in all respects as if she were a single woman, and the same shall in no way be subject to the control or disposal of her husband, nor liable for his debts."

In these circumstances, I believe that there was no proper evidence to authorize the jury to determine whether the plaintiff suffered pecuniary or financial loss in excess of $10,000 or in any other sum, and such evidence should not have gone to the jury on the question of damages. Since the proof discloses that the plaintiff husband had remarried prior to the time of the trial, it is reasonable to assume that a considerable portion of the $10,000 verdict represented that which the jury believed to be a financial or pecuniary loss to the husband.

It is error to give an instruction which is not supported by the evidence. *State* v. *Morris*, 142 W. Va. 303, pt. 7 syl., 95 S. E. 2d 401. There was no reasonable basis for a finding that the recently married housewife would have continued indefinitely to be gainfully employed and no reasonable basis for finding that the plaintiff would have become the owner, during her lifetime, of such earnings. A jury will not be permitted to base its findings or the amount of its verdict on conjecture or speculation. *Payne* v. *Ace House Movers, Inc.*, 145 W. Va. 86, 91, 112 S. E. 2d 449, 451; *State ex rel. Shatzer* v. *Freeport Coal Co.*, 144 W. Va. 178, pts. 4 and 5 syl., 107 S. E. 2d 503; *Ritz* v. *Kingdon*, 139 W. Va. 189, pts. 20 and 21 syl., 79 S. E. 2d 123; *Oates* v. *Continental Insurance Co.*, 137 W. Va. 501, pt. 1 syl., 72 S. E. 2d 886; *LaBris* v. *Western National Insurance Company*, 133 W. Va. 731, pt. 1 syl., 59 S. E. 2d 236. The giving of an erroneous instruction is presumed to be prejudicial and warrants a new trial unless it clearly appears that the complaining party was not prejudiced thereby. *Preston County Coke Co.* v. *Preston County Light & Power Co.*, 146 W. Va. 231, pt. 14 syl., 119 S. E. 2d 420.

For reasons stated I would reverse the judgment, set aside the verdict and award a new trial. It may be that the views expressed herein as to financial or pecuniary loss will soon be rendered purely academic, except as they relate to this case, by reason of a proposal now pending in the legislature to eliminate from the statute all the provisions relating to financial or pecuniary loss.

Incidentally, I am troubled by one thing which appears in this case and which I have observed in one or more instances heretofore in cases coming from circuit courts to this Court. The record indicates that this trial commenced on August 29, 1960, and that the jury returned its verdict on September 2, 1960. It does not appear from the record that any order was entered on the date the trial commenced to show such court action as the selection and swearing of the jury and the commencement of the trial. From the printed record at least it does not appear that any court order was entered on any of the days during which the trial was in progress. About eleven months later, on July 28, 1961, there was entered a single composite order setting forth the trial proceedings on a day-to-day basis, including joinder of issue, selection and swearing of the jury, the taking of testimony, the making of certain motions, arguments of counsel, the verdict of the jury, the discharge of the jury, a motion to set aside the verdict, the overruling of the motion to set aside the verdict, the entry of judgment, and the stay of execution in order to permit appeal. I believe the law contemplates a contemporaneous, daily recordation of court proceedings. It is fundamental that a court of record speaks only by its record and that, legally speaking, that which does not appear from the record did not occur. A court reporter's shorthand notes do not constitute a court's record, nor does a transcript thereof. Until it can be made clear to what extent, if any, the Rules of Civil Procedure have changed Code, 1931, 51-3-4, as amended, I would certainly want a contemporaneous, daily court record of any circuit court proceedings in which I might be vitally interested.