591 S.E.2d 226

The ESTATE OF Robert L. POSTLE-WAIT, by Eric POSTLEWAIT, Fiduciary, Plaintiffs Below, Appellee,

Karen L. Postlewait, Appellant,

v.

OHIO VALLEY MEDICAL CENTER, INC., a Corporation, et al., Defendants Below, Appellees,

and

Ohio Valley Medical Center, Inc., a Corporation, Third Party Plaintiff Below, Appellee.

No. 31406.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 5, 2003.

Decided Dec. 3, 2003.

Dissenting Opinion of Justice Maynard Dec. 8, 2003.

Concurring Opinion of Chief Justice Starcher Dec. 12, 2003.

Starcher, C.J., filed a concurring opinion.

Maynard, J., filed a dissenting opinion.

R. Gregory McDermott, Jeffrey A. Holmstrand, McDermott & Bonenberger, PLLC, Wheeling, for the Appellant, Karen L. Postlewait.

J. Thomas Madden, II, Madden Law Offices, Glen Dale, for the Appellee, Eric Postlewait.

Robyn Ruttenberg, Wheeling, for the Appellee, Louise Postlewait.

Robert P. Fitzsimmons, Don A. Yannerella, Michael C. Alberty, Marshall C. Spradling, Wheeling, for the Appellee, Estate of Robert L. Postlewait.

ALBRIGHT, Justice:

Appellant Karen L. Postlewait, widow of Robert L. Postlewait, appeals from the October 17, 2002, order of the Circuit Court of Ohio County wherein the trial court refused to approve her entitlement to settlement funds pursuant to a distribution agreement reached in the wrongful death cause of action filed in connection with Mr. Postlewait's

death.[1] Mr. Postlewait died apparently as a result of a delayed diagnosis of serious head injuries, which were sustained following a fall from Appellant's porch. While neither of the other two beneficiaries objected to Appellant's receipt of her share of the settlement funds,[2] the circuit court determined that it would be against the public policy of this State to allow someone who contributed to another person's death to be compensated for their loss of the deceased individual. Upon a full review of the record in this matter, we conclude that the lower court committed error by not approving the distribution agreement upon the facts of this case. Accordingly, we reverse and remand for entry of an order consistent with the rulings in this opinion.

## I. Factual and Procedural Background

Appellant, who was temporarily separated from her husband,[3] had gone to a social club sometime late on the evening of December 25, 1996. While there, she encountered her husband, who "was down in the dumps" due to being "denied unemployment" benefits while on strike from his place of employment. The Postlewaits parted and eventually Appellant returned home to the marital abode where she was currently residing by herself. At some point in the early hours of December 26, 1996, Mr. Postlewait knocked on the door of the marital home. Appellant "didn't want him [Mr. Postlewait] to come in[side] the house." She testified that

> we were saying unkind words to each other, [and that] I pushed my husband away to shut the door. I did not see my husband fall, I did not see my husband roll across a three-foot porch down a stairway that is approximately 16 to 18 inches wide containing a banister on each side, two wooden steps, approximately 16 to 18

inches long, and hit concrete that is in front of my house . . . .

> When I shut my door and I looked out three little windows that I have in my door, I seen my husband laying there, he was starting to get up. I asked my husband if he would like me to call 9–1–1, he said no. He was getting up, I put my arm around him (indicating) and I helped him into the house and sat him in the recliner. I went into the kitchen and I got something to clean his head off, a few washcloths and a towel, and I cleaned his head off. I told him, I said, "Postie," I said, "I think you need a stitch or two." It was just a little cut on his head (indicating).

> He said, "Oh, no. It's okay."

Mr. Postlewait slept in the recliner for the rest of the night while Appellant slept on the sofa. Mr. Postlewait did not seek medical assistance until January 2, 1997. On that date, he presented himself at Northwood Health Systems, exhibiting symptoms consistent with a brain injury. Dr. Manalac, the treating physician, testified that he verbally ordered a CAT scan[4] of Mr. Postlewait's head on that date to rule out the possibility of internal bleeding. Although Dr. Manalac anticipated that the CAT scan would be performed within twenty-four hours, it was not administered until January 5, 1997.

When the CAT scan was finally performed, and intra cranial bleeding detected, it was too late to provide the medical attention required to save Mr. Postlewait's life. He died six days later. A wrongful death action was filed on January 4, 1999, through which the estate of Mr. Postlewait asserted a cause of action against various medical providers for their failure to timely diagnose and treat Mr. Postlewait for a skull fracture. Eventually, a 3.2 million dollar settlement was reached in connection with the wrongful death cause of

---

1. In addition to Appellant, the decedent's mother and his son are the other two beneficiaries.

2. The trial court did approve the settlement agreement with regard to the distribution of funds to the other two beneficiaries and those funds have been released. *See supra* note 1.

3. Mrs. Postlewait testified that she and her husband "had a short separation" by "mutual agreement" due to stress they were experiencing be-

cause of her husband being on strike. During their separation, Mr. Postlewait was residing with his parents.

4. The medical records pertaining to Mr. Postlewait's medical care do not include a copy of an order for the CAT scan. Dr. Manalac testified that his failure to ensure that a written order was in the file was a deviation from the standard of care.

action. Under the agreement, Appellant; Louise Postlewait, the decedent's mother; and Eric Postlewait, the decedent's son, were to receive settlement proceeds. Appellant's share of the funds was approximately $691,000.

When the distribution agreement was presented to the circuit court, the trial court approved the settlement agreement and authorized the release of settlement funds to both Louise [5] and Eric Postlewait. However, the trial court *sua sponte* refused to authorize the release of settlement funds to Appellant. In concluding that Appellant was not entitled to receive her share of the settlement money, the trial court reasoned that Mrs. Postlewait's actions in causing her husband to fall off the porch contributed to his death. Consequently, the lower court determined that since a jury had not had the opportunity to determine whether Appellant's role in her husband's death should preclude her from a wrongful death recovery, it was required to make this factual determination. In making its ruling, the circuit court took judicial notice of certain "facts" [6] that were purportedly part of the record in the criminal case filed against Mrs. Postle-

wait for a misdemeanor charge of involuntary manslaughter. Given the remedial nature of the wrongful death statute, the trial court reasoned that Appellant was "not entitled by law to the agreed upon compensation provided for in the settlement of the wrongful death action involving her husband Robert L. Postlewait" based on her contributory role in her husband's death.

Arguing that the trial court abused its discretion in refusing to authorize the distribution of all proceeds where all the adult beneficiaries, or their representative,[7] had each signed the settlement agreement, Appellant seeks a reversal of the circuit court's order and distribution of funds pursuant to the agreement. Eric Postlewait, in his individual capacity, agrees with the position of Appellant.[8]

## II. Standard of Review

■ Our established standard of review for the findings of a circuit court was set forth in syllabus point two of *Walker v. West Virginia Ethics Com'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997):

In reviewing challenges to the findings and conclusions of the circuit court, we

---

5. The trial court appointed a guardian ad litem to represent the interests of Louise Postlewait, because she is in a nursing home located in Florida.

6. Those facts were as follows:

1) Robert L. Postlewait died as a result of a skull fracture incurred when Karen Postlewait pushed him from her front porch, causing him to fall and strike his head on the pavement.
2) The medical examiner stated in the certificate of death that the head injury was what caused Mr. Postlewait's death.
3) Mrs. Postlewait gave a written statement admitting that she pushed Mr. Postlewait off the porch and he hit his head and that there was blood on the sidewalk where his head struck the pavement.
4) On May 20, 1997 an indictment was returned against Karen Postlewait charging "[t]hat on or about December 26, 1996, in Ohio County, West Virginia, KAREN POSTLEWAIT committed the offense of "involuntary manslaughter," in that she unlawfully did kill and slay one Robert Postlewait, by committing a battery upon the said Robert Postlewait, by pushing the said Robert Postlewait causing him to fall and strike his head, against the peace and dignity of the State and in violation of West Virginia Code 61–2–5."

5) On September 4, 1997, an Ohio County jury found Karen Postlewait guilty of the offense of involuntary manslaughter.
6) The presiding judge in the matter, the Honorable Arthur Recht awarded Karen Postlewait a new trial. The reason for the award of a new trial was not set forth in any written Court Order.
7) On January 8, 1998, an Ohio County jury found Karen Postlewait not guilty of the offense of involuntary manslaughter.

7. The guardian ad litem signed the agreement on Louise Postlewait's behalf.

8. The estate of Mr. Postlewait, with Eric Postlewait serving as its personal representative, filed an initial brief in this matter in which the estate took a neutral position as to this matter based on the law's recognition that a wrongful death action is solely for the benefit of the beneficiaries and not the estate. *See Stone v. CSX Transportation, Inc.*, 10 F.Supp.2d 602, 604 (S.D.W.Va. 1998). Secondarily, however, the estate filed a reply brief in which it posited that the trial court's actions violated the Due Process guaranties of the Fourteenth Amendment.

Louise Postlewait, through her guardian ad litem, has taken no position with regard to this appeal.

apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

With these standards in mind, we proceed to determine whether the lower court committed error in denying to Appellant distribution of settlement moneys set aside for her benefit.

## III. Discussion

### A. Court Approval of Wrongful Death Compromises

■ Appellant argues that the lower court failed to apply this Court's holding in syllabus point seven of *Arnold v. Turek,* 185 W.Va. 400, 407 S.E.2d 706 (1991), in which we held that "[a]ll of the eligible beneficiaries may, by a written agreement, compromise a wrongful death claim and allocate the share to be paid to each. Such a settlement agreement will be binding in the absence of fraud, duress, or other invalidating factors." *Id.* at 401, 407 S.E.2d at 707. Because all three of the beneficiaries who could recover from the wrongful death action agreed to the terms of the distribution agreement with regard to the settlement of the legal claim, as evidenced by their signatures to such document,[9] and because there has been no evidence of any factors that would invalidate the agreement, Appellant contends that the lower court erred in failing to approve the distribution as to her.[10]

Rather than squarely addressing our decision in *Turek,*[11] the trial court looked to the wrongful death statutes for authority to withhold its approval of the distribution agreement. *See generally* W.Va.Code §§ 55–7–5 to –8 (Repl. Vol. 2000). As authority for examining the distribution agreement, the trial court looked to the language of West Virginia Code § 55–7–6 which provides that "[i]n every such action for wrongful death the jury, *or in a case tried without the jury, the court, may award such damages as to it may seem fair and just.*" W.Va.Code § 55–7–6(b) (emphasis supplied). Immediately following its recitation of this statutory language,[12] the lower court stated: "Thus, the wrongful death statute's compromise and settlement mechanism specifically contemplates court approval."

■ While we do not disagree with the lower court's deduction that court approval was required of the settlement distribution, we find distinct and explicit statutory authority for our conclusion. In a separate statutory provision that governs compromises of wrongful death claims, the following language is set forth:

The personal representative of the deceased may compromise any claim to damages arising under section five [§ 55–7–5] of this article before or after action brought.... *Upon approval of the compromise,* the court shall apportion and distribute such damages, or the compromise agreed upon, after making provisions for those expenditures, if any, specified in subdivision (2), subsection (c), section six [§ 55–7–6(c)(2)] of this article, in the same manner as in the cases tried without a jury.

W.Va.Code § 55–7–7 (emphasis supplied). Thus, court approval of compromise agreements is specifically contemplated in the wrongful death statutory scheme. *See Stone*

9. The guardian ad litem signed the document on behalf of Louise Postlewait.

10. *See supra* note 2.

11. The trial court cited *Turek* only for the proposition that "'other invalidating factors' in addition to fraud and duress would give a Court the right [to] set aside a written agreement compromising a wrongful death claim."

12. While the circuit court identified the language in West Virginia Code § 55–7–7 as bearing on the issue of whether the settlement agreement in

this case had to be presented to the court for approval, the circuit court also looked to West Virginia Code § 55–7–6 as authority for the court's involvement in this matter. The language relied upon by the court from that provision concerns distributions made where a wrongful death case was tried without a jury. The provisions of West Virginia Code § 55–7–6 which permit the trial court to direct the distribution of moneys are inapplicable, given the existence of a settlement agreement.

*v. CSX Transp., Inc.,* 10 F.Supp.2d 602, 604 (S.D.W.Va.1998) (stating that "[u]nlike other types of actions for damages, the wrongful death statute's compromise and settlement mechanism specifically contemplates court approval").

Confusion has apparently resulted from this Court's holding in *Jordan v. Allstate Insurance Co.,* 184 W.Va. 678, 403 S.E.2d 421 (1991), through which we required court approval of any settlement agreements in a wrongful death action that involved the claim of a minor. *Ibid.* at syl. pt. 1, 403 S.E.2d 421. Our holding in *Jordan* was based upon interpretation of West Virginia Code § 55–7–7, as amended and in effect in 1982. The following statutory language, which was instrumental to our decision in *Jordan,* provided that "if any such persons are incapable from any cause of giving consent, the personal representative may compromise with the approval of the judge of the court wherein any such action has been brought." W.Va. Code § 55–7–7 (1982). While that language is no longer included in the current version of West Virginia Code § 55–7–7, its removal has no effect on our ruling in this case. This is because both the 1982 version and the current version of West Virginia Code § 55–7–7 contain additional language that distinctly addresses in an all encompassing fashion the need to obtain court approval of a compromise or settlement in a wrongful death action. *Cf.* W.Va.Code § 55–7–7 (1982) to W.Va.Code § 55–7–7 (1989) (Repl. Vol. 2000) (recognizing that approval of compromise or settlement in wrongful death action is required prior to distribution of proceeds).

 To quell any lingering confusion over this issue, however, we wish to make clear that the language of West Virginia Code § 55–7–7 clearly contemplates and requires that all compromises of wrongful death actions be submitted to the circuit court for approval. Even in instances where the only beneficiaries to such a compromise are adults, the statute requires that such agreements be presented to the circuit court for approval. W.Va.Code § 55–7–7. Although the role of the trial court in those wrongful death cases involving only adult

beneficiaries, all of whom have consented to the terms of the settlement agreement, is necessarily limited, the trial court must still ascertain that each potential beneficiary has been included in the agreement and make inquiry regarding the presence any factor that could potentially serve to invalidate the agreement.

## B. Intervening Causation and Judicial Notice

 In refusing to approve the settlement as to Appellant, the trial court emphasized the factual issue of Mrs. Postlewait's contribution to the death of her husband. Looking solely to the cause of death listed on the death certificate, the circuit court concluded that Appellant had necessarily played a causative role in her husband's death. In its analysis, however, the trial court wholly overlooked the doctrine of intervening causation. Even if Appellant's actions did cause Mr. Postlewait to fall off the porch, the medical evidence in this action strongly suggests that it was the lack of a prompt diagnosis that was the actual cause of death and not the alleged push from the porch.[13] Our law recognizes that "[a]n intervening cause, in order to relieve a person charged with negligence in connection with an injury, must be a negligent act, or omission, which constitutes a new effective cause and operates independently of any other act, making it and it only, the proximate cause of the injury." Syl. Pt. 16, *Lester v. Rose,* 147 W.Va. 575, 130 S.E.2d 80 (1963). In citing Appellant's contributory role to the death of her husband as the basis for its non-release of funds to Mrs. Postlewait, the lower court clearly failed to consider the possibility that the alleged negligent acts of the medical providers who treated Mr. Postlewait were the sole proximate cause of his death under the doctrine of intervening causation.

To support its conclusion that an invalidating factor prevented Appellant from receiving the settlement funds in issue, the circuit court focused either on "facts" that have never been proven or by making certain improper legal assumptions. Mrs. Postlewait

---

**13.** Appellant testified that she did not push Mr. Postlewait off the porch.

was never charged with negligence in connection with her husband's death. None of the medical providers ever attempted to bring her into the wrongful death cause of action. Moreover, any issue as to whether there were factual impediments to Mrs. Postlewait's entitlement to recovery would have required jury resolution. *See* Syl. Pt. 2, *Evans v. Farmer*, 148 W.Va. 142, 133 S.E.2d 710 (1963) (holding that "questions of negligence, contributory negligence, proximate cause, intervening cause and concurrent negligence are questions of fact for the jury where the evidence is conflicting or when the facts, though undisputed, are such that reasonable men draw different conclusions from them").

■ To dispense with the unresolved factual issues presented by this case, the trial court proceeded to take judicial notice of certain "facts" from Appellant's criminal trial on the misdemeanor charge of involuntary manslaughter.[14] In so doing, the trial court exceeded the boundaries of matters that typically qualify as facts for purposes of judicial notice. Under Rule 201 of the West Virginia Rules of Evidence, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." W.Va.R.Evid. 201(b). Appellant argues, and we agree, that the "kinds of 'facts' the lower court judicially noticed" do not come within the parameters of Rule 201.[15]

■ The trial court was similarly mistaken in suggesting that the slayer statute found in West Virginia Code § 42-4-2 (1931) (Repl. Vol. 1997) would bar Appellant from receiving her share of the settlement funds at issue. That statute provides, in pertinent part, that "[n]o person who has been convicted of feloniously killing another, or of conspiracy in the killing of another, shall take or acquire any money or property, real or personal, or interest therein, from the one killed or conspired against, either by descent and distribution, or by will, or by any policy or

certificate of insurance, or otherwise...." *Id.* The provisions of the slayer statute make clear that a conviction is required to invoke its provisions. Moreover, in *McClure v. McClure*, 184 W.Va. 649, 403 S.E.2d 197 (1991), we held that "[w]here there is no such conviction [under West Virginia Code § 42-4-2], then evidence of an unlawful and intentional killing must be shown in a civil action." 184 W.Va. at 650, 403 S.E.2d at 198, syl. pt. 2, in part. Because Appellant was never charged with an intentional killing, but only involuntary manslaughter, the provisions of the slayer statute simply could not be invoked to prevent her receipt of settlement funds under the facts of this case.

■ Given the signatures of three adults, the only known beneficiaries, to the agreement, the trial court clearly abused its discretion in failing to approve the settlement agreement disbursement as to Appellant. While the circuit court was statutorily required to review the agreement and to approve or reject the same after determining whether there were any impediments to its enforcement, it was not the function of the trial court to determine that the public policy of this state proscribes Appellant's receipt of settlement funds absent a specific finding of fault as against Appellant. *See Bond v. Roos*, 358 N.W.2d 654, 657 (Minn.1984) (reversing trial court's decision to deny on public policy grounds mother's receipt of settlement funds from wrongful death action brought for child's death where mother was driver of one vehicle involved in accident which caused child's death based on absence of admission of fault or judicial determination of fault). Furthermore, the lower court committed error in taking judicial notice of matters, such as causation, that clearly were subject to dispute and, therefore, not properly subject to judicial notice. *See* W.Va. R.Evid. 201(b). Accordingly, under the record presented to this Court, we find no basis for the lower court's failure to authorize release of Appellant's share of settlement funds arising from the wrongful death action.

14. *See supra* note 6.

15. *See supra* note 6.

Based on the foregoing, we hereby reverse the decision of the Circuit Court of Ohio County and remand this matter for entry of an order approving Mrs. Postlewait's entitlement to receive her share of the settlement funds pursuant to the distribution agreement.

Reversed and remanded.

Justice MAYNARD dissents and files a dissenting opinion.

Chief Justice STARCHER concurs and files a concurring opinion.

MAYNARD, Justice, dissenting:

(Filed Dec. 8, 2003)

*Nemo ex suo delicto meliorem suam conditionem facere potest.* This dissent begins with a law school Latin phrase which we commonly state as "no man should profit from his own wrong." (Literally it translates as no one can make his condition better by his own misdeed). It is a venerable old maxim in equity and it is the reason I dissent in this case. The facts here are straightforward. Mrs. Postlewait pushed her husband off a porch causing him to fall onto concrete and suffer a serious brain injury that ultimately resulted in his death. Thereafter, Mrs. Postlewait filed a medical malpractice/wrongful death action against her husband's medical providers and successfully negotiated a settlement netting herself more than half a million dollars! The circuit court refused to approve the settlement, but the majority has determined that there is "no basis for the lower court's failure to authorize release of Appellant's share of settlement funds arising from the wrongful death action." Maj. Op. at 14, 591 S.E.2d at 233. I wholeheartedly disagree.

The majority finds fault with the circuit court's "fail[ure] to consider the possibility that the alleged negligent acts of the medical providers who treated Mr. Postlewait were the sole proximate cause of his death under

the doctrine of intervening causation." Maj. Op. at 11, 591 S.E.2d at 232. However, the majority equally fails to consider the possibility that Mrs. Postlewait's misconduct in pushing her husband off the porch played a significant role in her husband's death. Clearly, the chain of events that led to Mr. Postlewait's death were directly put in motion by Mrs. Postlewait. Given these circumstances, I am unable to find that Mrs. Postlewait is entitled to profit from her husband's death. Accordingly, I respectfully dissent.

STARCHER, C.J., concurring:

(Filed Dec. 12, 2003)

I concur with the majority's decision to reverse the circuit court's order, and to allow plaintiff Karen L. Postlewait to recover her agreed-upon share of the medical malpractice settlement proceeds.

Contrary to what my dissenting colleague suggests, the facts in this case are not "straightforward"—rather, they are subject to considerable debate. The record does not establish that Mrs. Postlewait "pushed her husband off a porch causing him to fall onto concrete and suffer a serious brain injury that ultimately resulted in his death."[1] The record, instead, indicates that Robert Postlewait had been drinking on the night in question, and that Mrs. Postlewait shoved him away from her door. Mrs. Postlewait's deposition—which is quoted in the majority's opinion—indicates that somehow, Mr. Postlewait fell or rolled across a three-foot-wide porch, down two steps with a banister on each side, and hit his head on the concrete at the base of the steps. Mrs. Postlewait, upon seeing her husband several minutes later crumpled on the concrete, then helped her husband into the house and helped him get cleaned up. Had Mr. Postlewait sought medical treatment immediately, he might have survived his fall. Because he waited, and because the medical treatment he finally received—by the defendants' own admission—was below the standard of care, he did not.

---

1. The record also does not establish, as my dissenting colleague asserts, that "Mrs. Postlewait filed a medical malpractice/wrongful death action against her husband's medical providers and successfully negotiated a settlement netting herself more than half a million dollars!" Instead,

the record establishes that Mr. Postlewait's son by a prior marriage, Eric Postlewait, filed the lawsuit on behalf of his father's estate, and negotiated a $3.2 million settlement. The younger Mr. Postlewait then agreed that his stepmother should receive $691,021.66.

Our law bars a person from sharing in a judgment or settlement when they have been "convicted of feloniously killing another," *W.Va.Code*, 42–4–2 [1931], or "[w]here there is no such conviction, then [when] evidence of an unlawful and intentional killing [has been] shown in a civil action." Syllabus Point 2, *McClure v. McClure*, 184 W.Va. 649, 403 S.E.2d 197 (1991). Mrs. Postlewait was acquitted of misdemeanor involuntary manslaughter. Additionally, the facts recited above simply do not prove that Mrs. Postlewait engaged in an "unlawful and intentional killing." She might have been guilty of negligence or gross negligence in shoving her husband—assuming it was the shoving that caused him to fall off the porch—but we have made clear that "negligence or gross negligence will not bar recovery under a slayer statute because the common law rule requires an intentional killing." *McClure*, 184 W.Va. at 652 n. 6, 403 S.E.2d at 200 n. 6.

In other words, there is no "straightforward," undisputed, jury-considered evidence in the record for a court to say Mrs. Postlewait intentionally caused the death of her husband. There is therefore no legal reason for a court to bar her from recovering for her husband's death—particularly when that death was the proximate result of clear-cut, admitted medical malpractice.

What I find most distressing about the circuit court's decision to invalidate the parties' settlement in this case is that nobody—neither the other beneficiaries to the settlement nor any of the medical defendants—objected to Mrs. Postlewait's receipt of her portion of the settlement. None of the defendants filed briefs before this Court, but the administrator of Mr. Postlewait's estate filed briefs—both in his individual capacity and in his fiduciary capacity—urging this Court to reverse the circuit court and allow the estate to distribute Mrs. Postlewait's share to her.

While a circuit court certainly has the authority, under *W.Va.Code*, 55–7–7 [1989] to review and approve the form and substance of a settlement in a wrongful death action, that review should generally focus on whether all of the statutory beneficiaries have been included or considered in the settlement, and

whether the settlement is the result of fraud, duress, or some other invalidating factor. *See* Syllabus Point 7, *Arnold v. Turek*, 185 W.Va. 400, 407 S.E.2d 706 (1991). The circuit court in this case went too far in relying upon disputed facts to reach a legal conclusion that the parties didn't even assert.

I therefore concur with the majority's opinion.