618 S.E.2d 561

Nashala **SYDENSTRICKER, as Mother and Natural Guardian of Michael Shawn George, II, an Infant, Plaintiff Below, Appellant,**

v.

**Petaiah MOHAN, M.D., Defendant Below, Appellee,**

and

**Nashala Sydenstricker, as Mother and Natural Guardian of Michael Shawn George, II, an Infant, Plaintiff Below, Appellee,**

v.

**Petaiah Mohan, M.D., Defendant Below, Appellant.**

**Nos. 32158, 32159.**

Supreme Court of Appeals of West Virginia.

Submitted May 24, 2005.

Decided June 30, 2005.

554

Harold F. Salsbery, Jennifer S. Fahey, Bailey & Glasser, Charleston, for Ms. Sydenstricker.

D.C. Offutt, Jr., Perry W. Oxley, David E. Rich, Offutt, Fisher & Nord, Huntington, for Dr. Mohan.

DAVIS, Justice:

This proceeding addresses two appeals from a medical malpractice action involving the same parties: Nashala Sydenstricker, plaintiff below, appellant and appellee (hereinafter referred to as "Ms. Sydenstricker"), and Dr. Petaiah Mohan, defendant below, appellee and appellant (hereinafter referred to as "Dr. Mohan"). Ms. Sydenstricker appeals from an order of the Circuit Court of Raleigh County denying her motion for a new trial. In Ms. Sydenstricker's appeal, she argues that she should have been granted a new trial, because the circuit court erred during the trial by: (1) allowing evidence of negligence committed by Dr. Carlos Lucero, a dismissed co-defendant; (2) allowing evidence that Dr. Mohan continued to treat her son after she sued Dr. Mohan for malpractice; (3) denying a motion to bifurcate liability and damages; (4) permitting Dr. Mohan to present inconsistent defenses; and (5) denying a new trial when the weight of the evidence justified a new trial. Here, Dr. Mohan contends that the circuit court erred in approving a settlement between Ms. Sydenstricker and Dr. Lucero; and further erred in denying his motion to set aside the settlement agreement.[1] We consolidated these two appeals for the purpose of rendering our decision. After a thorough review of the briefs, the designated record, and the oral arguments of the parties, we affirm the circuit court's denial of Ms. Sydenstricker's motion for a new trial. Further, we dismiss Dr. Mohan's appeal as moot.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On March 6, 1998, Ms. Sydenstricker gave birth to a son, Michael Shawn George, II, at Raleigh General Hospital.[2] After Michael's birth, Ms. Sydenstricker selected Dr. Carlos Lucero as her son's pediatrician. Dr. Lucero examined Michael and authorized his release from the hospital on March 10, 1998. After Ms. Sydenstricker took Michael home, she began noticing blisters on his scalp. On March 12, 1998, Ms. Sydenstricker contacted Dr. Lucero's office regarding Michael's blisters. Ms. Sydenstricker was advised that Dr. Lucero was on vacation; however, arrangements had been made for Dr. Mohan to see Dr. Lucero's patients.[3] Ms. Sydenstricker therefore took her child to Dr. Mohan's office.

During Dr. Mohan's examination of the child, he developed a differential diagnosis of either a bacterial or viral infection. Nevertheless, Dr. Mohan believed that the blisters were probably due to a bacterial infection. Consequently, he obtained a tissue culture of the area. Dr. Mohan sent the tissue culture to a laboratory for analysis.[4] Meanwhile, Dr. Mohan prescribed an antibiotic ointment, Bactroban, to treat the blisters. Ms. Sydenstricker was instructed to return to Dr. Mohan's office if the blisters got worse, and was told to follow-up with Dr. Lucero when he returned from vacation.[5]

On March 16, 1998, Ms. Sydenstricker took Michael to see Dr. Lucero, who had returned from vacation, because the blisters on Mi-

---

1. Dr. Mohan, as the prevailing party below, did not file a cross assignment of error pursuant to Rule 10(f) of the Rules of Appellate Procedure. Rule 10(f) "specifically allows an appellee to file a cross assignment, notwithstanding the fact that the appellee did not file a separate petition for appeal within the statutory period for taking an appeal." *Stafford v. Rocky Hollow Coal Co.*, 198 W.Va. 593, 596 n. 4, 482 S.E.2d 210, 213 n. 4 (1996) (per curiam). Dr. Mohan instead filed a separate petition for appeal, which this Court granted. We caution that the better practice for prevailing litigants like Dr. Mohan is to file a cross assignment of error under Rule 10(f).

2. The child was delivered by Dr. Marcia Khalil.

3. Dr. Mohan and Dr. Lucero had completely separate practices.

4. On March 15th the laboratory results were returned indicating that a bacterial infection was found. During the trial, this issue was disputed on the ground that the laboratory determination of a bacterial infection was due to contamination of the tissue culture.

5. Ms. Sydenstricker did not take Michael back to see Dr. Mohan regarding the blisters.

chael's scalp had grown worse. Dr. Lucero believed the blisters became worse as a result of an allergic reaction to the Bactroban ointment. Dr. Lucero instructed Ms. Sydenstricker to discontinue use of the Bactroban ointment, and prescribed a sterile solution for Michael's scalp. Ms. Sydenstricker was told to return to Dr. Lucero's office in three weeks.

On March 21, 1998, Ms. Sydenstricker took Michael to Raleigh General Hospital because he began suffering seizures at home. Tests performed at the hospital determined that Michael's seizures were caused by a herpes virus, which had also caused the earlier scalp blisters. Treatment was initiated to prevent encephalitis, a viral infection of the brain. Unfortunately, the condition had progressed too far and, as a consequence, Michael sustained permanent brain damage. Ms. Sydenstricker subsequently filed a medical malpractice action, individually and as mother and natural guardian of her infant son, on March 2, 2001. The complaint named as defendants Drs. Mohan and Lucero.[6] Dr. Mohan filed an answer to the complaint that included a cross-claim against Dr. Lucero.

After a brief period of discovery, it became clear that Dr. Lucero's insurer, Western Indemnity Insurance Company, was having financial problems and would most likely end up in receivership.[7] As a consequence, Ms. Sydenstricker entered into a settlement agreement with Dr. Lucero. Although Dr. Lucero's medical malpractice policy had a limit of $1,000,000.00, Ms. Sydenstricker agreed to settle with Dr. Lucero for $200,000.00. During the July 22, 2002, settlement hearing, Dr. Mohan objected to the settlement arguing that the "settlement unfairly and unjustly left the onus of liability solely on his shoulders, and if the Court were to exclude evidence of Dr. Lucero's

negligence, the settlement would destroy Dr. Mohan's ability to defend himself." Dr. Mohan's objections were denied. The settlement was approved by the court in an order entered on September 5, 2002. The order approving the settlement specifically held "that all claims asserted or which could have been asserted against [Dr. Lucero], by plaintiffs in this civil action, or which were asserted against him by the co-defendants by way of cross-claim are hereby DISMISSED WITH PREJUDICE[.]"

On May 16, 2003, Dr. Mohan filed a motion to set aside the order approving the settlement. Dr. Mohan also filed a motion to permit the introduction of evidence regarding Dr. Lucero's negligence. By order entered July 7, 2003, the circuit court denied Dr. Mohan's motion to set aside the order approving the settlement. In a separate order entered on August 22, 2003, the circuit court granted Dr. Mohan's motion to introduce to the jury evidence of Dr. Lucero's negligence.

The case proceeded to trial on September 8, 2003. On September 16, 2003, the jury returned a verdict in favor of Dr. Mohan. Ms. Sydenstricker filed a motion for a new trial, which was denied. Thereafter, separate appeals were filed by Ms. Sydenstricker and Dr. Mohan. We consolidated these appeals for the purpose of rendering our decision in this matter.

## II.

### STANDARD OF REVIEW.

Ms. Sydenstricker appealed from an order denying her motion for a new trial. We have held that

"the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, [and] the trial

---

6. The complaint also named Dr. Khalil and Raleigh General Hospital as defendants. Ms. Sydenstricker voluntarily dismissed Dr. Khalil from the action on August 23, 2002. Raleigh General Hospital was dismissed from the action on September 30, 2002, as a result of a settlement in which Raleigh General Hospital paid Ms. Sydenstricker $15,000.00. Although Dr. Mohan had filed cross-claims against Dr. Khalil and Raleigh General Hospital, he did not oppose their dismissal.

7. Western Indemnity was not covered by the West Virginia Insurance Guaranty Association, "a statutorily-created fund that provides a degree of backup coverage when an insurance company cannot meet its obligations." *Harris v. Jones*, 209 W.Va. 557, 559, 550 S.E.2d 93, 95 (2001) (per curiam). *See* W. Va.Code § 33–26–1, *et seq.*

court's ruling will be reversed on appeal [only] when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. pt. 4, in part, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976).

Moreover, in *Tennant v. Marion Health Care Foundation*, 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995), we explained:

> We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

■ Our cases have made clear that "[a]n appellate court will not set aside the verdict of a jury, founded on conflicting testimony and approved by the trial court, unless the verdict is against the plain preponderance of the evidence." Syl. pt. 2, *Stephens v. Bartlett*, 118 W.Va. 421, 191 S.E. 550 (1937). *Accord Yates v. University of West Virginia Bd. of Trustees*, 209 W.Va. 487, 494, 549 S.E.2d 681, 688 (2001). Therefore,

> [i]n determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true.

Syl. pt. 3, *Walker v. Monongahela Power Co.*, 147 W.Va. 825, 131 S.E.2d 736 (1963). *Accord In re Tobacco Litigation*, 215 W.Va. 476, 480, 600 S.E.2d 188, 192 (2004).

With respect to the appeal by Dr. Mohan, we are called upon to review the trial court's determination that the settlement agreement between Dr. Lucero and Ms. Sydenstricker was made in good faith. We have held that "when this Court undertakes the appellate review of a circuit court's order [involving] a settlement agreement, an abuse of discretion standard of review is employed." *DeVane v. Kennedy*, 205 W.Va. 519, 527, 519 S.E.2d 622, 630 (1999).

With these standards in mind, we proceed to review the issues presented by the particular circumstances before us. Additional standards that are specific to certain issues addressed in this opinion will be discussed in connection with our analysis of those issues.

### III.

### DISCUSSION

#### A. Issues Raised by Ms. Sydenstricker

Because Ms. Sydenstricker has raised several assignments of error, we will proceed to separately address each matter raised by her.

■ **1. Allowing evidence of negligence committed by Dr. Lucero.** The first issue raised by Ms. Sydenstricker is that the trial court erroneously allowed the introduction of evidence regarding Dr. Lucero's negligence in treating her child.[8] Ms. Sydenstricker argues that evidence of Dr. Lucero's negligence was inadmissible under Syllabus point 7 of *Rowe v. Sisters of Pallottine Missionary Society*, 211 W.Va. 16, 560 S.E.2d 491 (2001).[9] The trial court allowed the evidence based upon its interpretation of footnote 5 of

---

8. In conjunction with this assignment of error, Ms. Sydenstricker argued that the trial court committed error in directing a verdict against Dr. Lucero. This issue is without merit. During the jury charge, the trial court instructed the jury that the evidence mandated finding Dr. Lucero negligent. This instruction was correct insofar as all of the experts testified that Dr. Lucero's conduct was negligent. The instruction, however, did not relieve Dr. Mohan of liability and the jury could have so found. Further, Ms. Sydenstricker contends that the circuit court erred in instructing the jury to apportion fault to Dr. Lucero. The court did not so instruct the jury. The trial court provided a verdict form which

allowed the jury to apportion fault between Dr. Mohan and Dr. Lucero. However, the jury concluded that Dr. Mohan was not the proximate cause of the injury and therefore made no apportionment between the two physicians.

9. Syllabus point 7 of *Rowe v. Sisters of Pallottine Missionary Society*, 211 W.Va. 16, 560 S.E.2d 491 (2001) states: "Without some proof of negligence by the plaintiff, there is no requirement that the jury be instructed to ascertain or apportion fault between the defendant and a non-party tortfeasor."

*Rowe* [10] as allowing the evidence in this case because Dr. Mohan had asserted a cross-claim for contribution against Dr. Lucero.[11] We need not decide the admissibility of this evidence under *Rowe;* however, because the evidence was admissible for other purposes. *See Murphy v. Smallridge,* 196 W.Va. 35, 36–37, 468 S.E.2d 167, 168–69 (1996) ("An appellate court is not limited to the legal grounds relied upon by the circuit court, but it may affirm or reverse a decision on any independently sufficient ground that has adequate support."); Syl. pt. 3, *Barnett v. Wolfolk,* 149 W.Va. 246, 140 S.E.2d 466 (1965) ("This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment.").

■ Pursuant to "Rule 105 of the West Virginia Rules of Evidence, if evidence is inadmissible under one theory but is admissible under another ... theory, then the admission of such evidence is proper if an adequate limiting instruction is [requested and] given." *State v. Phillips,* 194 W.Va. 569, 585 n. 25, 461 S.E.2d 75, 91 n. 25 (1995).[12] *See also Westfarm Assoc. Ltd. P'ship v. Washington Suburban Sanitary Comm'n,* 66 F.3d 669, 685 (4th Cir.1995) ("[E]vidence may be admitted though it is inadmissible for one purpose, where it is admissible for another."); *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.,* 630 F.2d 250, 265 (5th Cir. 1980) ("[E]vidence which is properly admissible for one purpose should not be automatically excluded merely because it is inadmissible for another[.]"); *Socks–Brunot v.*

**10.** Footnote 5 of the *Rowe* opinion states:

Between tortfeasors who have asserted claims for contribution, however, an instruction allowing a jury to apportion fault may be necessary so as to allow the tortfeasors to ascertain their degrees of joint and several liability. The concept of joint and several liability is a doctrine separate from the comparative negligence doctrine. As we held in Syllabus Point 2 of *Sitzes v. Anchor Motor Freight, Inc.,* 169 W.Va. 698, 289 S.E.2d 679 (1982), joint and several liability among joint tortfeasors was not changed by the adoption of the comparative negligence doctrine. When contribution claims have been asserted between joint tortfeasors, the relative fault of the various tortfeasors is relevant, and a jury could be properly instructed to assess the fault of the joint tortfeasors.

Additionally, when a tortfeasor seeks contribution or otherwise seeks to share liability with other tortfeasors, we have said:

"West Virginia jurisprudence favors the consideration, in a unitary trial, of all claims regarding liability and damages arising out of the same transaction, occurrence or nucleus of operative facts, and the joinder in such trial of all parties who may be responsible for the relief that is sought in the litigation."

Syllabus Point 4, *Sheetz, Inc. v. Bowles Rice McDavid Graff & Love, PLLC,* 209 W.Va. 318, 547 S.E.2d 256 (2001).

*In the instant action, appellant St. Mary's Hospital is the sole party tortfeasor. It does not appear from the record that any cross- or counter-claims for contribution have been asserted.* 211 W.Va. at 24–25 n. 5, 560 S.E.2d at 499 n. 5 (emphasis added).

**11.** Ms. Sydenstricker also points out that under the version of the Medical Professional Liability Act, W. Va.Code § 55–7B–9, that was in place at

the time of the trial, Dr. Mohan could not seek contribution. This statute provided in relevant part:

No right of contribution exists against any defendant who entered into a good faith settlement with the plaintiff prior to the jury's report of its findings to the court or the court's findings as to the total dollar amount awarded as to damages.

W.Va.Code § 55–7B–9(c) (1986). The statute was amended in 2003 and now provides in relevant part:

In assessing percentages of fault, the trier of fact shall consider only the fault of the parties in the litigation at the time the verdict is rendered and shall not consider the fault of any other person who has settled a claim with the plaintiff arising out of the same medical injury.

W.Va.Code § 55–7B–9(b) (2003). Insofar as our decision on this issue turns on another defense theory, we need not address the application of W. Va.Code § 55–7B–9(c).

**12.** Rule 105 states in full:

When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

Professor Franklin D. Cleckley has noted that "under Rule 105 it appears clear that there is generally no need to give a ... limiting instruction unless one is requested[.]" 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 1–7(G)(2), at 1–110 (2000). In the instant proceeding, Ms. Sydenstricker did not request a limiting instruction on the use of evidence relating to Dr. Lucero's negligence.

*Hirschvogel Inc.*, 184 F.R.D. 113, 119 (S.D.Ohio 1999) ("Generally, evidence admissible for one purpose but inadmissible for another may be heard by a jury, pursuant to Federal Rule of Evidence 105."); *Porter v. Erickson Transport Corp.*, 851 S.W.2d 725, 742 (Mo.Ct.App.1993) ("It is the general rule in a jury case that where evidence is admissible for one purpose or one issue, but inadmissible for other purposes or other issues, it should be received, and the objector then has the right to an instruction, if he requests it, limiting the extent to which and the purpose for which the jury may consider such evidence."); *Hill v. Hartog*, 658 P.2d 1206, 1208 (Utah 1983) ("Evidence which is [inadmissible] for one purpose cannot be excluded if it is admissible [for] another purpose."). Consequently, we expressly hold that evidence that is admissible as to one party or for one purpose may not be excluded merely because it is not admissible for another party or for another purpose. When such evidence is admitted, however, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly as required by Rule 105 of the West Virginia Rules of Evidence.

■ The record in this case is clear. In addition to asserting a cross-claim for contribution, Dr. Mohan also asserted the defense of intervening cause. "[T]he function of an intervening cause [is that of] severing the causal connection between the original improper action and the damages." *Harbaugh v. Coffinbarger*, 209 W.Va. 57, 64, 543 S.E.2d 338, 345 (2000)(per curiam). "Our law recognizes that '[a]n intervening cause, in order to relieve a person charged with negligence in connection with an injury, must be a negligent act, or omission, which constitutes a new effective cause and operates independently of any other act, making it and it only, the proximate cause of the injury.'" *Estate of Postlewait ex rel. Postlewait v. Ohio Val-*

*ley Med. Ctr., Inc.*, 214 W.Va. 668, 674, 591 S.E.2d 226 (2003) (quoting Syl. pt. 16, *Lester v. Rose*, 147 W.Va. 575, 130 S.E.2d 80 (1963)).

■ Insofar as intervening cause is a recognized defense in this State, the defense can be established only through the introduction of evidence by a defendant that shows the negligence of another party or a nonparty. *See Schreiber v. National Smelting Co.*, 157 Ohio St. 1, 104 N.E.2d 4, 8 (1952) ("The defendant is ... permitted to establish, if he can, an efficient independent cause. That cause could be the negligence of a third person not a party to the action."). Consequently, in order for Dr. Mohan to establish the defense of intervening cause, he had to be allowed to introduce evidence of Dr. Lucero's negligence, even if the evidence was inadmissible under *Rowe* as Ms. Sydenstricker contends. Therefore, the trial court did not commit error in allowing such evidence to be introduced for the purpose of establishing the defense of intervening cause.[13]

■ **2. Allowing evidence that Dr. Mohan continued to treat Ms. Sydenstricker's son after she sued Dr. Mohan for malpractice.** After Ms. Sydenstricker's son was diagnosed with herpes encephalitis in 1998, she dropped Dr. Lucero as Michael's treating pediatrician. Ms. Sydenstricker selected Dr. Mohan to be Michael's treating pediatrician. Dr. Mohan continued to be the child's treating physician after Ms. Sydenstricker filed this medical malpractice lawsuit against him. In fact, the record reveals that Dr. Mohan did not stop providing medical care to Michael until shortly before the trial in 2003.

On the day the trial began, Ms. Sydenstricker filed a motion in limine to preclude Dr. Mohan from testifying that he was her child's treating physician after the lawsuit was filed. The trial court denied the motion thereby allowing the evidence. Neverthe-

---

**13.** During the trial the circuit court gave the following instruction in its charge to the jury:

Dr. Mohan has asserted the affirm-has asserted the affirmative defense of intervening cause in this case. As with all other affirmative defenses, it is Dr. Mohan's burden to prove intervening cause by a preponderance of the evidence. This issue is for you, the jury, to decide. An intervening cause of an injury is an independent negligent act or omission which constitutes a new effective cause and, which operating independently of anything else, is the proximate cause of the injury. Such a negligent act by a third person breaks the causal connection of the first actor, and relieves him of the legal responsibility for the harmful result.

less, the court precluded the parties from raising the issue during their opening statements. We have held that "rulings on the admission of evidence ... are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary ... rulings of the circuit court under an abuse of discretion standard." Syl. pt. 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995).

Ms. Sydenstricker contends that she is entitled to a new trial because she was prejudiced by the trial court's decision to admit evidence that Dr. Mohan was Michael's treating physician after the lawsuit was filed. We disagree. Under Rule 402 of the West Virginia Rules of Evidence "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of West Virginia, by these rules, or by other rules adopted by the Supreme Court of Appeals." Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Finally, Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]"

There is no question that Dr. Mohan's testimony regarding his treatment of the child during the pendency of the litigation was relevant to material issues in the case. The evidence addressed issues associated with both liability and damages. The only real issue regarding Dr. Mohan's testimony on these issues is whether the probative value of the evidence was outweighed by its prejudicial effect. The trial court addressed the issue of the prejudicial impact of the evidence as follows:

> *See*, that's the screwy thing we have. We have the defendant and the primary treating physician all in one person, which is something that I've never encountered in the dozens and dozens of medical malpractice cases I have been associated with. I don't think we can find any case law

anywhere on this situation, because its such a curious circumstance.

> And I appreciate the gravity of this motion. This is the case breaker. And I don't know whether the attorneys are aware of the circumstance, but· this will determine the outcome of this trial, and that's why I couldn't sleep last night, because I appreciated the gravity of this matter, because if the doctor is allowed to testify as not only the defendant, but as the continuing treating physician of the child, the jury will wonder how in the world this woman is suing the doctor for millions of dollars, and yet bringing him regularly—the child—for treatment.

> . . . .

> Well, there's no question that it will prejudice the jury. Unfortunately, every bit of evidence that comes into court usually has some prejudicial value. It is my job, as the gatekeeper, to make sure that the probative value outweighs the prejudicial value.

> . . . .

> Here we have a most curious circumstance that I have already identified. The treating physician and the defendant are all rolled up into one person. Dr. Mohan is the one person on the planet that knows the most about the medical condition of this child. I think it would be improper to exclude him. I'm rapidly trying to think of ways to try to limit the extreme prejudice that will result, and I would be happy to try to work out a limiting instruction. I'll consider anything that is submitted, but I don't think I can keep this testimony out by any stretch of the imagination.

The circuit court's comments indicate that the evidence concerning Dr. Mohan's treatment of the child, after the action was filed against him, was highly prejudicial. However, the circuit court determined that, in spite of such prejudice, the probative value of Dr. Mohan's testimony demanded that he be allowed to provide evidence of his continued care for Michael.[14] The circuit court's im-

14. Dr. Mohan did not, in fact, make any direct statements that indicated he was the child's treating physician after the lawsuit was filed against him. Dr. Mohan's testimony was based

plicit Rule 403 analysis is consistent with observations made by Professor Franklin D. Cleckley:

> A very common error for novice counsel is to object to evidence as "prejudicial to my client." A party is always prejudiced by relevant, damaging evidence admitted by the opponent, and the law will not exclude evidence on the basis of "prejudice." Counsel must use "unfair prejudice," cite Rule 403, and apply the balancing test. The fact that evidence is prejudicial is not grounds for its exclusion. It is safe to say that almost all evidence introduced is prejudicial in one degree or another; indeed, that is usually why it is introduced: If the prejudice caused by the evidence outweighs its probative value, it should be excluded.... The fact that a piece of evidence hurts a party's chances does not mean it should be automatically excluded. If that were true, there would be precious little left in the way of probative evidence in any case. The question is not one of prejudice, but unfair prejudice under Rule 403.
>
> Therefore, Rule 403 was never intended to exclude relevant evidence simply because it is detrimental to one party's case....

1 Cleckley, *Handbook on Evidence* § 4–3(B)(1), at 4–38. *See also Turner v. Northwest Arkansas Neurosurgery Clinic, P.A.*, 84 Ark.App. 93, 133 S.W.3d 417, 422 (2003) ("[T]he mere fact that evidence is prejudicial to a party does not make it inadmissible; it is only excludable if the danger of unfair prejudice substantially outweighs its probative value."); *Doe v. Christoforo*, 87 Conn.App. 359, 865 A.2d 444, 449 (2005) ("[A]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted."); *Waknin v. Chamberlain*, 467 Mich. 329, 653 N.W.2d 176, 179 (2002)

("Evidence is not inadmissible simply because it is prejudicial. Clearly, in every case, each party attempts to introduce evidence that causes prejudice to the other party.").

█ In view of the foregoing, we hold that a defendant who continues to be the treating physician for a plaintiff after the plaintiff files a medical malpractice complaint against him/her, may testify regarding his/her post-complaint treatment of the plaintiff, so long as the probative value of the testimony is not substantially outweighed by the danger of unfair prejudice pursuant to Rule 403 of the West Virginia Rules of Evidence.

In the instant proceeding, Dr. Mohan's testimony, from which the jury could conclude that he was the treating physician for Michael after the lawsuit was filed against him, was highly prejudicial.[15] However, the probative value of Dr. Mohan's testimony was critical for assessing issues pertaining to liability and damages. Specifically, this evidence would aid the jury in assessing when the irreparable harm from the herpes virus actually occurred, the harm caused by the virus prior to trial, as well as the post-trial long-term effects of the virus. Consequently, on this record we cannot say that the prejudice flowing from such testimony outweighed its probative value. Thus, the circuit court did not abuse its discretion in allowing Dr. Mohan to testify regarding his post-lawsuit treatment of Michael.

█ **3. Denying motion to bifurcate liability and damages.** When the trial court ruled that Dr. Mohan could testify that he continued as the treating physician for Michael after the lawsuit was filed, Ms. Sydenstricker moved the court to bifurcate the liability and damages phases of the trial.[16] It was Ms. Sydenstricker's position that testimony regarding Dr. Mohan's continued treatment of Michael would be relevant only

upon specific dates of treatment he provided the child.

**15.** We reiterate that there was no direct statement made to the jury that Dr. Mohan's treatment of the child continued after the malpractice complaint was filed. Instead, Dr. Mohan testified as to specific dates when he provided treatment. It was left up to the jury to notice that

those dates occurred after the complaint was filed.

**16.** Dr. Mohan's brief contends that the issue of bifurcation was not raised below and is therefore waived. Based upon the record, we find that the issue was raised before the trial court and is therefore properly before this Court.

for the damages phase of the trial. We have held that "this Court 'will not interfere with a bifurcation decision in the absence of an abuse of ... discretion.'" *Rohrbaugh v. Wal–Mart Stores, Inc.*, 212 W.Va. 358, 368, 572 S.E.2d 881, 891 (2002) (quoting *Bennett v. Warner*, 179 W.Va. 742, 748, 372 S.E.2d 920, 926 (1988)). Further, "because the trial court has such broad discretion in this arena, rarely will we find that its ruling on a bifurcation motion constitutes reversible error." *Barlow v. Hester Indus., Inc.*, 198 W.Va. 118, 127, 479 S.E.2d 628, 637 (1996). The decision in *Barlow* also noted that,

> [t]o demonstrate that the trial court abused its discretion, a showing of "compelling prejudice" is required. "Compelling prejudice" exists where a [party] can demonstrate that without bifurcation he or she was unable to receive a fair trial ... and that the trial court could afford no protection from the prejudice suffered. In short, this Court will grant relief only if the appellant can show prejudice amounting to fundamental unfairness.

*Barlow*, 198 W.Va. at 127, 479 S.E.2d at 637 (quoting *State v. LaRock*, 196 W.Va. 294, 315, 470 S.E.2d 613, 634 (1996)).

The trial court provided two reasons for denying the motion to bifurcate. First, the court found that the motion came on the day of trial and, therefore, was not timely.[17] Second, the court reasoned that Dr. Mohan's testimony regarding his treatment of Michael would be relevant at both the liability phase and damages phase. Consequently, bifurcation would serve no purpose and would be a waste of judicial resources. The issue of bifurcation in light of evidence with a potential for impacting both phases of a trial has been commented upon as follows:

> In determining whether to bifurcate a trial, circuit courts should be mindful of the danger that evidence relevant to both issues may be offered at only one-half of the trial. This hazard necessitates the determination that the issues of liability and damages be totally independent of each other prior to permitting bifurcation.... Piecemeal litigation is not to be encouraged. Particularly is this so in the field of personal injury litigation, where the issues of liability and damages are generally interwoven and the evidence bearing upon the respective issues is commingled and overlapping.

. Franklin D. Cleckley, Robin Jean Davis & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 42(c), at 797 (2000). We believe that the trial court's reasons for denying bifurcation were sound. Therefore, we find no abuse of discretion in the trial court's decision.

■ **4. Allowing Dr. Mohan's presentation of inconsistent defenses.** Ms. Sydenstricker contends that the trial court erred in denying her motion to preclude Dr. Mohan from presenting inconsistent defenses to the jury and to reflect the same in the verdict form. The inconsistent defenses raised by Dr. Mohan were: lack of negligence, contribution, and intervening cause. Ms. Sydenstricker's position is flawed.

■ "Rule 8(e)(2) [of the West Virginia Rules of Civil Procedure] permits alternative, inconsistent and mixed pleadings." Cleckley, Davis & Palmer, *Litigation Handbook* § 8(e)(2), at 201.[18] Consequently, "[n]othing prevents a party from asserting inconsistent defenses[.]" *Granus v. North American Philips Lighting Corp.*, 821 F.2d 1253, 1256 (6th Cir.1987). Ms. Sydenstricker has attempted to circumvent Rule 8(e)(2) by arguing that the doctrine of judicial estoppel prevented Dr. Mohan from taking inconsistent positions.

---

**17.** The issue of timeliness was critical because Ms. Sydenstricker wanted to have separate juries try the liability and damages phases of the trial.

**18.** Rule 8(e)(2) of the West Virginia Rules of Civil Procedure provides:

A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal or on equitable grounds or on both. All statements shall be made subject to the obligations set forth in Rule 11.

■ This Court recently addressed the application of judicial estoppel in *West Virginia Dept. of Transp. v. Robertson*, 217 W.Va. 497, 618 S.E.2d 506, 2005 WL 1124401 (2005). In syllabus point 2 of *Robertson* we held that:

> Judicial estoppel bars a party from relitigating an issue when: (1) the party assumed a position on the issue that is clearly inconsistent with a position taken in a previous case, or with a position taken earlier in the same case; (2) the positions were taken in proceedings involving the same adverse party; (3) the party taking the inconsistent positions received some benefit from his/her original position; and (4) the original position misled the adverse party so that allowing the estopped party to change his/her position would injuriously affect the adverse party and the integrity of the judicial process.

Ms. Sydenstricker contends that judicial estoppel applies because "Dr. Mohan invoked the intervening cause defense to persuade the Circuit Court to let him make Dr. Lucero's negligence an issue at trial." Consequently, Dr. Mohan could not also put on a defense alleging that he was not negligent. This contention is without merit. The doctrine of judicial estoppel does not preclude inconsistent defenses.[19] It has been recognized that an "argument offered at pretrial in support of one defense [does not] bar[ ] the defendant from asserting a possibly inconsistent defense that the trial court had given the defendant permission to raise after the pretrial." *Granus v. North American Philips Lighting Corp.*, 821 F.2d 1253, 1256 (6th Cir.1987). Consequently, we reject the issue raised by Ms. Sydenstricker in this assignment of error.

■ **5. Denying a new trial.** Ms. Sydenstricker contends that she was entitled to a new trial because the weight of the evidence indicated Dr. Mohan was liable. Specifically, Ms. Sydenstricker argued that "the

evidence established that Dr. Mohan's treatment of Michael fell below the standard of care when he failed to order both bacterial and viral cultures on March 12, 1998." This Court has held that,

> In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

Syl. pt. 15, *Foster v. Sakhai*, 210 W.Va. 716, 559 S.E.2d 53 (2001) (quoting Syl. pt. 5, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983)).

Ms. Sydenstricker's argument is flawed. All of the experts who testified at trial agreed that no injury occurred to Michael between the time he was seen by Dr. Mohan and when he was taken to Dr. Lucero on March 16th. All of the experts further agreed that, had Dr. Lucero properly treated Michael on March 16th, the encephalitis would not have developed. Consequently, the clear weight of the evidence established that Dr. Mohan's arguably negligent treatment was not the proximate cause of the injury. *See Perry v. Melton*, 171 W.Va. 397, 399, 299 S.E.2d 8, 10 (1982) ("Under our law the intervening act of a third person may constitute a new and effective cause, which operating independently of one party's negligence, is the proximate cause of the injury or death.") We therefore reject the sufficiency of the evidence contention.

### B. Dr. Mohan's Appeal

■ Dr. Mohan filed a separate appeal arguing, in essence, that should this Court grant Ms. Sydenstricker a new trial, then we should reverse the trial court's rul-

---

**19.** The decision in *Robertson* was clear in noting that " '[t]he doctrine of judicial estoppel does not conflict with Rule 8(e)(2), which permits a party to plead inconsistent theories, because judicial estoppel does not bar a party from contradicting itself, the doctrine bars contradicting a court's determination that was based on that party's position.' " *Robertson*, 217 W. Va. at 504 n. 18, 618 S.E.2d at 513 n. 18 (quoting Cleckley, Davis & Palmer, *Litigation Handbook* § 3(f), at 11 n. 30 (Supp. 2005)).

564

ing approving the settlement between Ms. Sydenstricker and Dr. Lucero. Insofar as we are denying Ms. Sydenstricker's request for a new trial, the issue raised in Dr. Mohan's appeal is now moot. " '[M]oot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or property are not properly cognizable by a court.' " *Velogol v. City of Weirton,* 212 W.Va. 687, 688–689, 575 S.E.2d 297, 299 (2002) (per curiam) (quoting Syl. pt. 1, *State ex rel. Lilly v. Carter,* 63 W.Va. 684, 60 S.E. 873 (1908)).

## IV.

### CONCLUSION

Based upon the foregoing, we affirm the circuit court's denial of Ms. Sydenstricker's motion for a new trial. Further, we dismiss Dr. Mohan's separate appeal as moot.

Affirmed/Appeal Dismissed.